BOST *v*. MASTERS.

5-2756                                              361 S. W. 2d 272

Opinion delivered September 24, 1962.

[Rehearing denied November 12, 1962.]

*Hardin, Hardin & Barton,* for appellant.

*Sexton & Morgan,* by *Sam Sexton, Jr.,* for appellee.

CARLETON HARRIS, Chief Justice. Texana D. Masters, beneficiary of H. J. Alexander, instituted suit to collect certain benefits under a program provided by the United Furniture Workers Insurance Fund for members of the

United Furniture Workers Union. United Furniture Workers of America, AFL-CIO, is an unincorporated labor organization, and local union No. 270 is located at Fort Smith. H. J. Alexander was a member of this union, and was entitled to benefits under a program provided and administered by the United Furniture Workers Insurance Fund. A death benefit in the amount of $1500 was provided, and an additional $1500 benefit was payable if the covered member sustained loss of life by external, accidental, and violent means. However, this last benefit was subject to the following condition:

"The foregoing benefits shall, however, not be paid where loss of life, limb and/or sight is directly or indirectly, wholly or partly connected with or related to the commission of a crime or an offense by the covered member or by any other person."

Alexander died as a result of injuries sustained in an automobile collision on October 31, 1959. The $1500 death benefit was paid, but payment of the additional $1500 accidental death benefit was refused, because it was contended that Alexander was operating his vehicle under the influence of intoxicating liquor, and was in the process of violating several traffic laws at the time of the collision. Suit was instituted by appellee against appellants, Elmer Bost, president, Margaret Howard, secretary of local union No. 270, Louis Campbell, Trustee, United Furniture Workers of America, and the United Furniture Workers Insurance Fund, and summons issued. The sheriff's return reads as follows:

"I have this 30 day of November, A.D., 1960, duly served the within by delivering a copy of the same to each of the within named: Elmer Bost in person. Louis Campbell in person. Margaret Howard by serving a true copy to Louis Campbell, Trustee, United Workers of America, AFL-CIO."

Appellants appeared specially, filing a motion to quash and dismiss, asserting:

"That the plaintiff has attempted to procure service of process upon the United Furniture Workers Insurance Fund, a Trust, organized and existing under and by virtue of the laws of the State of New York, with its office and principal place of business located at 700 Broadway, in New York City, N.Y., by serving a purported process upon these named defendants; That the United Furniture Workers Insurance Fund has not and does not at any time herein material, maintain an office or place of business in Fort Smith, or the State of Arkansas; that it has not filed with the Secretary of State or the Insurance Commissioner of the State of Arkansas, application for authority to do business in this State; that the United Furniture Workers Insurance Fund, as a Trustee, has no corporate rights and that the purported service of process herein constitutes no service upon said United Furniture Workers Insurance Fund; that these defendants, as officers of Local Union No. 270 of United Furniture Workers of America, AFL-CIO, have no control whatever over the United Furniture Workers Insurance Fund and have no authority to administer or regulate the Fund and, as such, are not officers or trustees of the United Furniture Workers Insurance Fund, and have not been and are not authorized to accept service of process."

The motion was overruled by the court, and appellants, without waiving their special appearance and specifically reserving their rights thereto, filed an answer, and subsequently, two amendments thereto, setting up that the Fund was not liable because Alexander met his death as a result of violating the law. In each amendment, appellants reserved their rights under the original motion to quash service. On trial, the jury found that Alexander's death was not directly or indirectly, wholly or partly, connected with or related to the commission of a crime or an offense. The court held that the defendants constituted an insurance company under the laws of this state, and accordingly entered judgment for $1500 plus the statutory penalty of 12%, and an attorney's fee of

$750, together with interest from date until paid. From the judgment so entered, appellants bring this appeal. Several points are urged by appellants in seeking a reversal. Point No. 1 is: "The court erred in overruling defendants' motion to quash the service of summons." Since we find, as hereinafter set out, that this point is well taken, other alleged grounds for reversal, relating to the evidence and rulings during the trial, will not be discussed; *i. e.,* since we are of the opinion that the court did not, under the service obtained, acquire jurisdiction over the United Furniture Workers Benefit Fund, there is no occasion, nor would it be proper, to discuss the actual proceedings, and evidence, at the trial.

It is apparent from the Sheriff's return that the United Furniture Workers Insurance Fund was never served. It is equally apparent that Margaret Howard was not properly served. However, this last is immaterial. This action was brought as a class or representative action, but we agree with appellants that the service was ineffective, for the reason that the union members, as a class, are in no way responsible to appellee. The individual appellants who were served with summons, and the local union, did not insure anyone, and did not agree to provide death benefits for Alexander. It appears from the exhibits introduced, that in May, 1944, the "United Furniture Workers Insurance Fund" was created. The Agreement and Declaration of Trust creating such fund reflects that the fund is operated by a Board of Trustees, composed of eleven members, with its office at 700 Broadway, New York City. The trust was created and accepted in the state of New York, and the trustees, in their collective capacity, are known as United Furniture Workers Insurance Fund, and are authorized to conduct all business of the trust and execute all instruments in that name. The manner of obtaining the monies to make up the fund is explained in the opening resolution of the Declaration of Trust, as follows:

"WHEREAS, the United Furniture Workers of America (herein called the 'Union') has executed through its affiliated locals or will through its affil-

iated locals from time to time hereafter execute collective bargaining agreements or supplements to collective bargaining agreements with manufacturers of furniture, bedding and kindred products as described in Article III, titled 'Jurisdiction' of the Union's Constitution (said manufacturers herein called the 'Employers') which, among other things, provide for the payment by such Employers to the United Furniture Workers Insurance Fund (herein called the 'Fund') periodically a sum of money equal to a stated percentage of the wages paid during the preceding month to those of its employees who are covered and entitled to the benefits of the collective bargaining agreement between the Employer and the Union; and

WHEREAS, the sums payable to the Fund as aforesaid (herein called the 'employer contributions') are for the purpose of providing social insurance to the members of the Union employed in the furniture industry:

NOW, THEREFORE, in consideration of the premises, the Trustees declare that they will receive and hold the employer contributions and other money or property which may come into their hands as Trustees hereunder (all such employer contributions, money and property being herein called the 'Trust Estate') with the following powers and duties and for the following uses, purposes and trusts and none other, to-wit:''

The subsequent paragraphs set out the various duties of the trustees, which include, *inter alia,* depositing the money, investing and reinvesting same, employing administrative, legal, accounting, clerical, and other assistance, purchasing or leasing real estate, establishing and accumulating reserve funds, etc. It does not appear that the local union, or any of its officers, have anything to do with the collection of funds, or any part in handling such funds. Upon becoming eligible for benefits, a worker receives a hospital identification card from the New York office. In this particular instance, the Fund

did not have complete information on Alexander, and a form was sent out from New York City, signed by Abraham Zide (Director of the Fund), for the additional information. When a claim for benefits is made, the completed claim forms are sent to the fund office in New York.

For that matter, it does not appear that mere membership in a furniture workers' union entitles a member to benefits. A booklet distributed by the New York office states:

"Eligible members shall be covered for benefits only so long as contributions are received from employers under the terms of their collective bargaining agreements.

## ELIGIBILITY

Benefits provided by the Program are for members in this area employed by contributing employers. New fulltime employees become eligible for the Program's benefits after completion of 30 working days for which their employers have contributed to the United Furniture Workers Insurance Fund. Employees working for a non-contributing employer become eligible for benefits under the Program on the effective date that such an employer becomes a contributing employer under the terms of the collective bargaining agreement with a Local Union."

No payments are made by the individual members of the union, the trust fund, as herein pointed out, being derived solely from the contributions of employers. Since the union, and its individual members, are not responsible to appellee, it follows that the service obtained was totally inadequate and ineffective, and the court acquired no jurisdiction over the United Furniture Workers Insurance Fund by virtue of the service obtained on the officers of local union No. 270.

The trial court held that "the defendants do constitute 'an insurance company' within the meaning of the laws and statutes within the State of Arkansas applicable

to this cause." It is apparent, from the reasoning heretofore set out, that we disagree with the holding that the union, or its officers, constitute an insurance company; however, we do agree that the United Furniture Workers Insurance Fund comes within the definition of an insurance company. Act 148 of the General Assembly of 1959 (Sections 66-2001 through 66-4920, Ark. Supp., 1961) is known as the Arkansas Insurance Code. Section 2 of said Act (§ 66-2002) defines "insurance" as follows: "Insurance is a contract whereby one undertakes to indemnify another or pay a specified amount or provide a designated benefit upon determinable contingencies." This definition certainly applies in the instant case. United Furniture Workers Insurance Fund undertook to pay a specified amount to Alexander's beneficiary upon events which were determinable. Of course, in some respects, the Fund differs from the ordinary conception of an insurance company, in that it does not sell to the general public, nor does the member pay any part of the premium. However, the contributions from the employers, in effect, serve the same purpose as premiums from the individual members, and the program of benefits is essentially the same as that provided in many general insurance contracts. [1] At any rate, we are of the opinion and hold, that service against the United Furniture Workers Insurance Fund can properly be obtained under

---

[1] The program provides as follows:

"DEATH BENEFITS FOR MEMBERS—$1,500 paid in the event of death from any cause. See page 7.

ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS FOR MEMBERS—Up to $1,500 paid in the event of accidental death or loss of hands, feet or eyesight through accidental means. See page 8.

WEEKLY ACCIDENT AND SICKNESS BENEFITS FOR MEMBERS—Up to $25 a week paid for a maximum of 26 weeks in any one benefit year for an off-the-job accident or illness. See page 9.

WEEKLY MATERNITY BENEFITS FOR WOMEN MEMBERS—Up to $25 a week paid for a maximum of six weeks for any one pregnancy. See page 10.

MEDICAL BENEFITS FOR MEMBERS—Up to $2 paid for office visits and up to $3 for home and hospital calls for a maximum of $150 during any one continuous period of disability. See page 11.

SURGICAL BENEFITS FOR MEMBERS AND DEPENDENTS —Up to $160 paid for operations performed on members and up to $160 for operations performed on dependents. See page 12.

HOSPITALIZATION BENEFITS FOR MEMBERS AND DEPENDENTS—Up to $8 per day for 31 days plus $80 for miscellaneous charges. See page 21."

the "Unauthorized Insurers Process Act", found in Sections 66-2903 through 66-2907, Supp., 1961 (§ 183 through 187 of Act 148 of 1959). Section 66-2904 provides that:

"Delivery, effectuation, or solicitation of any insurance contract, by mail or otherwise, within this State by an *authorized*[2] insurer, or the performance within this State of any other service or transaction connected with such insurance by or on behalf of such insurer, shall be deemed to constitute an appointment by such insurer of the Commissioner and his successors in office as its attorney, upon whom may be served all lawful process issued within this State in any action or proceeding against such insurer arising out of any such contract of transaction; and shall be deemed to signify the insurer's agreement that any such service of process shall have the same legal effect and validity as personal service of process upon it in this State."

Section 66-2905 sets forth the manner of obtaining service.

Because, as heretofore set out, service was not properly obtained, the judgment of the Circuit Court is reversed and set aside. It is so ordered.

---

Opinion delivered November 12, 1962.

Supplemental Opinion on Rehearing.

CARLETON HARRIS, Chief Justice. In her petition for rehearing, appellee points out that this court overlooked the fact that Louis Campbell of Fort Smith is a trustee of the United Furniture Workers' Insurance Fund, and, since service was had upon Campbell, the Fund was properly served under the provisions of Sub-section (2) of Section 66-2905, 1961 Supp. Exhibit 1, which appears

---

[2] The word "authorized" appearing in the Supplement is a printer's error. In the printed Acts of the General Assembly of 1959, the word appears as "unauthorized," and the bill, signed into law by the Governor, shows the word to be "unauthorized." The title itself is indicative of the fact that the word properly is "unauthorized."

in the transcript, reflects that one "Louie Campbell" is a trustee of the fund, and apparently, from appellee's petition, Louis and Louie is one and the same.

Appellee's petition is without merit for three reasons. In the first place, appellee did not argue in her original brief that service was obtained upon a trustee of the insurance fund, though appellants devoted considerable space in their brief to the argument that service on the fund was not obtained. Appellee's sole argument, relating to service, was to the effect that this action was brought as a class action. The heading of appellee's Point II in the original brief reads,

"The appropriate procedure for bringing an action against an unincorporated association is by a class or representative action and the trial court correctly overruled appellants' motion to quash service of summons."

In her discussion under this point, appellee stated,

"This Court has held many times that the appropriate manner for obtaining service upon an unincorporated association in this state is by a class or representative action. Indeed, this is the only manner in which service can be had."

In other words, appellee never made the contention, now advanced, in her original brief. We have said on numerous occasions that we do not consider matters, in civil actions, which are not argued in the brief, and any point not argued is deemed waived. *Connell* v. *Robinson*, 217 Ark. 1, 228 S. W. 2d 475, *Johnson* v. *Gammill*, 231 Ark. 1, 328 S. W. 2d 127.

In the next place, as admitted in appellee's petition for rehearing, Exhibit 1, along with another exhibit which appellee contends to be pertinent, were not abstracted by either appellant or appellee in the original briefs. Appellee called attention to the fact that appellants had not properly abstracted these exhibits, but made no effort to supply the deficiency herself. In appellants' reply brief, Exhibit 1 was partially abstracted, but the portion showing Louie Campbell to be a trustee of United Furni-

ture Workers' Insurance Fund, was omitted. Rule 9, Sub-section (e) of the procedural rules of this court provides,

"If the appellee considers the appellant's abstract to be defective he may, at his option, submit with his brief a supplemental abstract. When the case is considered on its merits the court may impose or withhold costs to compensate either party for the other party's noncompliance with this rule."

In *Anderson* v. *Stallings*, 234 Ark. 680, 354 S. W. 2d 21, we said,

"We have repeatedly pointed out that it is not practical for the seven members of this Court to examine the one record filed here, and that under Rule 9 the burden is on the appellant to furnish such an abstract as will give the various members of the Court an understanding of all questions presented. *Farmers Union Mutual Insurance Co.* v. *Watt, et ux,* 229 Ark. 622, 317 S. W. 2d 285. *Porter* v. *Time Stores, Inc.,* 227 Ark. 286, 298 S. W. 2d 51: * * * We have often said that we will not explore the record; * * *"

Further, Rule 20, Sub-section (h), which relates to "Petitions for Rehearing," provides,

"In no case will such petition be granted when based on any fact thought to have been overlooked by the Court, unless reference has been clearly made to same in the abstract of record prescribed by Rules 9 and 11."

Finally, even though the matter had been argued in appellee's original brief, and the exhibits properly abstracted, it would still appear that the petition is without merit, for the reason that the provisions of Sub-section (c) of Sub-section (2), § 66-2905, have not been complied with.

The petition for rehearing is denied.