Jimmy D. GARRETT, Election Commissioner of Conway County, Arkansas, et al. *v.* Ed N. ANDREWS, George Andrews, et al.

87-102 & 87-103 741 S.W.2d 257

Supreme Court of Arkansas
Opinion delivered December 21, 1987
[Supplemental Opinion on Denial of Rehearing
February 8, 1988.*]

---

*Purtle, J., concurs; Hickman, Hays, and Glaze, JJ., dissent.

*Villines & Lacy*, by: *M. Watson Villines II*, and *William R. Lacy*, for appellants.

*Mark S. Cambiano, P.A.*, for appellees Morrilton Liquor, Inc. and Charles Garrett.

*Laws, Swain & Murdock, P.A.*, by: *Ike Allen Laws III*; and *Felver A. Rowell*; and *Street & Kennedy*, by: *Alex G. Street*, for appellees.

ROBERT H. DUDLEY, Justice. On November 4, 1986, the voters of Conway County were presented with the local option of whether to continue allowing the manufacture and sale of alcoholic beverages. After a recount of the votes, the election results were certified on November 10, with the "drys" winning by 33 votes. On November 26, which was 16 days after the certification, the "wets" filed a complaint contesting the election result. The complaint named as defendants the three election commissioners. Four "drys" petitioned to intervene in the contest and pleaded that the contest was not timely filed, since it was not filed within 10 days of the certification as required by Ark. Stat. Ann. § 48-820(2). On May 20, 1987, one of the election commissioners, Jimmy Garrett, filed a general denial. Process had been served on Garrett December 2, 1986. The trial court found the contest had been timely filed, and that the petitioners, the "wets," were entitled to a default judgment setting aside the election. We reverse and dismiss.

The first point of appeal raised by the appellants, or the "drys," is that the trial court erred in refusing to dismiss the complaint due to its untimely filing. The argument has merit. Ark. Stat. Ann. § 48-820 (Repl. 1977), which is a part of the Arkansas Alcoholic Control Act provides in pertinent part:

> 48-820. *Contest of election.—Any election held under this law may be contested as provided for in this section*:
>
> 1. *Hearing and determination.* The contest shall be heard and determined by the same board which, by law, is

authorized and empowered to hear and determine a contest of an election for county officers; and the same provisions of the statutes shall apply to the contest of any election held under this law as are provided for the contest of any election for county officers, except as hereinafter provided.

2. *Petition.* Any number of the citizens and legal voters, but not less than ten [10] of the county, city, town, district, or precinct in which the elections have been held, shall have the right to contest any election held under this law, and shall be designated the contestants. Such contestants shall, *within ten (10) days after the final action of the examining board*, file in the office of the clerk of the county court a written statement of the grounds of the contest, and shall cause a copy thereof, to be served on the county judge, and shall give notice thereof by written or printed notice to be posted at the courthouse door of the county, and in three or more public places in the county, city, town, district or precinct in which the election has been held, and shall cause the same to be published in some newspaper of the county, when possible, for two [2] consecutive issues, commencing not later than the first issue of the paper after filing the statement. When a notice of the contest shall be executed on the county judge, the certificate shall not be recorded.

(Emphasis added.)

The first independent clause of subsection 1 above provides that a local option election contest is to be heard by the same "board" that is authorized by law to hear a contest of an election for county officers. "Board" now means circuit court. *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972). The second independent clause of the subsection, the key clause, provides that statutes governing the contest of any election for county officers shall apply to local option election contests, "*except as hereinafter provided.*" Subsection 2 then contains the exceptions which apply to local option contests. One of the exceptions provided is the requirement that the contest be filed "within 10 days after the final action of the examining board." This means within ten (10) days after the certification of the vote.

*Wurst* v. *Lowery*, 286 Ark. 474, 695 S.W.2d 378 (1985). In *Wurst*, we said:

> We hold that, by analogy, Wurst's time for intervening in the case expired with the lapse of the time allowed for filing a contest of a local option election, which is ten days after the certification of the vote. Ark. Stat. Ann. § 48-820 (Repl. 1977).

The appellees argued, and the trial court ruled, that a different statute, Ark. Stat. Ann. § 3-1001 (Repl. 1976), was the governing statute. It allows twenty (20) days for the filing of an election contest. That statute is a part of the comprehensive election code of 1969 which contains thirteen (13) articles, all of which are directed toward elections involving *candidates*, and not toward local option elections.

Ark. Stat. Ann. § 3-1001 provides:

> 3-1001. *Procedure.* — A right of action is hereby conferred on any *candidate* to contest the certification of nomination or the certificate of vote as made by the appropriate officials in any election. The action shall be brought in the Circuit Court of the county in which the certifications of nomination or certificate of vote is made when a county or city or township office, including the office of county delegate or county committeeman, is involved, and except as hereinafter provided, within any county in the Circuit or District wherein any of the wrongful acts occurred when any Circuit or District office is involved, and, except as hereinafter provided, in the Pulaski Circuit Court when the office of United States Senator or any State office is involved. If there are two (2) or more counties in the District where the action is brought and when fraud is alleged in the complaint, answer or cross complaint the Circuit Court may hear testimony in any county in the district. The complaint shall be verified by the affidavit of the contestant to the effect that he believes the statements thereof to be true, and shall be filed within twenty (20) days of the certification complained of. The complaint shall be answered within twenty (20) days.

(Emphasis added.).

The repealer section of the comprehensive act does not specifically repeal the local option act. Appellees argue that Ark. Stat. Ann. § 3-1004(c) repealed the local option election act. Section 3-1004(c) provides:

> (c) Except as hereinafter provided all laws pertaining to *general and special elections* or rules of political organizations holding primary elections providing for contest before political conventions or committees other than the proceedings herein provided shall be of no further force or effect.

(Emphasis added.)

However, "general and special elections" are defined as elections involving only *candidates* or *officials*. Ark. Stat. Ann. § 3-101(c) provides:

> (c) "General or special election" shall mean the regular biennial or annual elections for election of United States, State, District, County, Township and Municipal *officials*, and the special elections to fill vacancies therein. Such term, as used in this Act, shall not apply to school elections for *officials* of school districts.

(Emphasis added.)

Thus, the local option election statute, which does not involve candidates or officials, was not repealed by the comprehensive election code. Our interpretation of these statutes is consistent with the rule of statutory construction which provides that two statutes should be construed so as to give effect to both, if possible, and repeals by implication are not favored by the law. *Faver* v. *Golden, Judge*, 216 Ark. 792, 227 S.W.2d 453 (1950).

The appellees argue that the interpretation we adopt is inconsistent with our holding in *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972). Our holding in that case is that jurisdiction to try local option election contests is in circuit court. All else is dicta.

The appellees did not file this election contest within the ten (10) day period specified by § 48-820, the governing statute. As a result, the trial court should have dismissed the complaint. In *Gower* v. *Johnson*, 173 Ark. 120, 292 S.W. 382

(1927), we explained:

> The judgment of the circuit court was correct. Under our previous decisions construing our primary election statute, the right to contest a primary election is a statutory proceeding, the purpose of which is to furnish a summary remedy and to secure a speedy trial. The provision requiring the contest to be filed within ten days has been held to be mandatory and jurisdictional. If the contest is not filed within ten days after certification of the nomination complained of, the failure to institute the contest within that time is fatal to the right of the contestant. *Hill* v. *Williams*, 165 Ark. 421, 264 S.W. 964, and *Storey* v. *Looney*, 165 Ark. 455, 265 S.W. 51.
>
> As was said by the Supreme Court of the United States in *Walsh* v. *Mayer*, 111 U.S. 31: "The provisions requiring it to be asserted in a particular mode and within a fixed time are conditions and qualifications attached to the right itself, and do not form part of the law of the remedy. If it is not asserted within the limited period, it ceases to exist, and cannot be claimed or enforced in any form."

Accordingly, we must reverse and dismiss this cause.

The only remaining issue is the appellees', or "wets'," argument that the appellants, or "drys," had no standing to resist the election contest. Four appellants attempted to intervene in the suit against the election commissioners. The trial judge ruled that these four voters could not intervene, because the applicable statute, § 48-820(3), requires ten (10) voters to resist a local option contest. We need not determine whether that ruling was correct, because, in addition, one of the election commissioners, a named defendant, entered his appearance to resist the contest. If his appearance had been made within twenty (20) days after he was personally served, there would be no question about his standing. However, his appearance was made more than twenty (20) days after service. As a result, the appellees contend the appellants have no standing and they are entitled to a default judgment under ARCP Rule 55. The contention is without merit.

The local option election statutes do not set a specific number of days for the filing of an answer. Under such circum-

stances, in a local option election contest, a trial court may permit an answer at any time between the prompt filing and the expedited trial. *See Cain* v. *McGregor*, 182 Ark. 633, 32 S.W.2d 319 (1930). Since the trial court could permit the answer to be filed at any time before the trial commenced, the response filed in this case was sufficient to prevent a default, and the appellant election commissioner does have standing.

 Further, even if the contestee were in default, a default judgment setting aside the election would not be mandated. The Arkansas Rules of Civil Procedure apply to civil actions. ARCP Rule 2. A civil action is an ordinary proceeding by one party against another for the enforcement or protection of a *private* right or redress or prevention of a *private* wrong. Ark. Stat. Ann. § 27-106 (Repl. 1979). Every other remedy is a special proceeding. Ark. Stat. Ann. § 27-107 (Repl. 1979). Therefore a local option election contest is a special proceeding, and it is not necessary that all of the rules of civil procedure be applied. *See Reed* v. *Baker*, 254 Ark. 631, 495 S.W.2d 849 (1973). As we said in *LaFargue* v. *Waggoner*, 189 Ark. 757, 75 S.W.2d 235 (1934), judicial application of procedural rules in election contests "must not be so strict as to afford protection to fraud, by which the will of the people is set at naught, nor so loose as to permit the acts of sworn officers, chosen by the people, to be inquired into without an adequate and well-defined cause."

 Therefore, Rule 55 should not be applied to a special proceeding when the result would be to set aside a valid public election without any proof whatsoever. In fact, the local option election statute contemplates proof even where there are no contestees. Ark. Stat. Ann. § 48-820(4) provides in pertinent part: "In case the required number [10] shall fail to appear as contestees, ex parte testimony shall be competent . . . ."

Reversed and dismissed.

HICKMAN, J., concurs.

HAYS and GLAZE, JJ., dissent.

DARRELL HICKMAN, Justice, concurring. I concur in the result and note that it may be the Arkansas Election Code was intended to cover local option elections; specifically, to change the ten day time in which to challenge an election to 20 days.

However, the question is academic. We decided in *Wurst* v. *Lowery*, 286 Ark. 474, 695 S.W.2d 378 (1985), the ten day provision was still alive. That decision was notice to all, like all precedents are. For parties and lawyers to have ignored *Wurst* and presumed it wrong was not wise; to overrule *Wurst* now would penalize those who have a right to rely on it.

I go with precedent.

TOM GLAZE, Justice, dissenting. I am astounded by the court's decision. Generally speaking, I feel this court has shown enlightenment when called upon to interpret reform legislation in a way to meet its purposes and goals. However, of the several theories the parties advanced in this case, the court has managed to accept the one argument that not only defeats the minimal election reforms gained by the passage of Act 465 of 1969, the Arkansas Election Code, its interpretation of that Code reverts to the way our election laws existed in 1874. At the same time the court's decision effectively buries the serious allegations of wide-spread election fraud that arose out of the Conway County General Election on November 4, 1986.

The court's opinion is flawed in so many respects that I find it difficult to know where to begin; but I will try.

First, I will begin with a brief recitation of what led to this appeal. Local option elections, commonly called "wet/dry elections," are by law required to be held at the same time the general election is conducted. *See* Ark. Stat. Ann. § 48-801 (Supp. 1985) and § 48-824 (Repl. 1977). Here, a wet/dry election was held in Conway County on November 4, 1986. The Conway County Board of Election Commissioners (hereafter Commissioners) certified the "drys" as having won by thirty-three votes. Sixteen days later, the "wets" filed an election contest, alleging election fraud. Although the irregularities are too numerous to list here, some of the allegations were:

*Election officials or their agents fraudulently substituted ballots that they previously marked for all the voters in two voting precincts;

*Voters shown as having voted twice;

*Nonresident and nonregistered voters had voted or were

voted by someone other than the voter;

*Ballots were marked by pencil, except the wet/dry question, which had been marked by pen (and vice versa);

*Ballot boxes contained more ballots than voters named on the voter lists;

*Erasures made in the "wet box" on ballots, which were counted as "dry" votes;

*A dead person was voted;

*Electioneering was practiced within the polling places.

The Commissioners were served with the "wets'" complaint, but, for whatever reason, the Commissioners chose not to respond. About one month after the votes had been certified, four individuals, who were "drys," filed a motion to intervene and asked the court to dismiss the wets' complaint because they claimed Ark. Stat. Ann. § 48-820(2) (Repl. 1977) required the wets' complaint to have been filed within ten days of the Commissioner's certification of the vote, and the wets had filed their complaint six days too late. The trial court ruled the ten-day requirement had been superceded by the twenty-day requirement contained in Ark. Stat. Ann. § 3-1001 (Repl. 1976) of the Arkansas Election Code and the wets' complaint was timely since it had been filed sixteen days after the vote was certified. The trial court also held the drys had not properly or timely intervened and the wets were entitled to a default judgment.

The majority court opines that the ten-day requirement in the 1935 local option statute, § 48-820(2), controls because the twenty-day limitation in the 1969 code, § 3-1001, applies only to elections involving *candidates*. The majority's conclusion here is "bad wrong." If it were right that the Code applies only to the election of candidates and officials, the Arkansas General Assembly needs to convene immediately to enact some election laws to conduct elections which bear on millages, bonds, annexations, initiatives and referendum measures, just to name a few. Like local option elections, most of these questions are required to be placed on the ballot at the biennial general election. If the Code provisions (including its chapters on State and County Board of Election Commissioners, General and Special Elections, Con-

duct of Elections, Absentee Voting, Voting Machines, as well as Election Contests) apply only to candidates and not issues, then we have no election laws by which the state can conduct an election pertaining to the important ballot questions I listed above. Of course, such a conclusion is unthinkable.

Instead, the conclusion that the Code applies to issue elections as well as ones involving candidates is unquestionably the case, at least until the majority's decision today. The enactment of § 48-802 (Repl. 1977) (emphasis added), in fact, made it very clear that the local option elections *"shall be conducted by the Election Commissioners in the same manner as General Elections are conducted, and the same responsibility should rest upon all election officials conducting said election as in conducting General Elections*, and only qualified electors shall be eligible to vote therein."[1]

The Code, which covers all primary, special, and general elections, contains an entire chapter as to how election contests must be conducted. It also spells out the election officials' duties in such contests and, after defining those duties and procedures, § 3-1004(c) of that Code chapter, concerning election contests, provides:

> . . . *all laws pertaining to general and special elections or rules* of political organizations holding primary elections providing for contest before political conventions or committees *other than the proceedings herein provided shall be of no further force or effect.* [Emphasis added]

Clearly, the General Assembly intended by § 3-1004(c) to apply the election contest provisions of the Code to all general, special, and primary elections. On the other hand, § 48-802, a 1942 Initiated Measure noted above, shows conversely that the people intended the local option elections to be conducted pursuant to the election laws (the Code) that apply to the biennial general election. The entire idea or intent behind these laws or measures was to have a uniform election system which covered all

---

[1] Section 48-802 was amended by § 2 of Act 266 of 1985 to provide for a four-year period (instead of a two-year period) lapse in time before another election can be held on the same question in the same affected territory.

elections, albeit for candidates or issues. For example, as alluded to earlier, most issue-type elections, including local option elections, have absolutely no laws that govern how they should be conducted except for the provisions contained in the Code. Furthermore, the election contest provisions which *were* established in the old 1935 local option law now clearly conflict with the contest provisions set out in the Code. Thus, to accept the majority's logic that those 1935 election contest provisions are still viable means that two entirely different and conflicting election contest laws would apply to the same general election, when a local option was also held. *See* Ark. Stat. Ann. §§ 48-820 to -822 (Repl. 1979) and §§ 3-1001 to -1009 (Repl. 1976).

Relying on certain language in § 48-820, the majority says that the election contest procedure in local option elections is independent from that which is provided in the Code. Wrong again! That statute was based upon the law as it was in 1935. At that time, election contests were within the jurisdiction of the *county court. See* Ark. Stat. Ann. § 3-1205 (Repl. 1956). Thus, the procedures in § 48-820, which direct election contests to be filed with the clerk of the county court, are simply no longer the law. The majority attempts to explain the outdated reference (in § 48-820) to "Board" as meaning "circuit court", but such an explanation is undermined by reading the following statutory provision, § 48-821, which provides that contestants or contestees have a right to appeal "from the decision of the board to the circuit court." Obviously, if a "board's" decision was appealed to the circuit court in 1935, we cannot then equate the term board with the circuit court today. There simply is no reconciling these old terms and references contained in the 1935 local option contest procedures because they reflected, and meshed with, the general election laws as those laws existed in 1935.

The local option laws have since changed in 1942, 1943, 1983, and 1985, as have the comprehensive election laws in 1969 and afterwards. When the Code provided for a twenty-day requirement in election contests, any statute in force contrary to that requirement was superceded. *See* § 3-1004(c). While the majority notes that § 48-820 was not specifically repealed by the Code, the Code did provide that all election contest laws, other than that contained in § 3-1004(c), were of no further force and effect. As a consequence, the local option ten-day requirement for

filing election contests must fall to the twenty-day provision set forth in the Code.

I make brief reference to the majority's mention of *Wurst* v. *Lowery*, 286 Ark. 474, 695 S.W.2d 378 (1985), as authority that the ten-day requirement in § 48-820 is still law. Suffice it to say, the parties never contended in *Wurst* that such ten-day limitation was superceded by §§ 3-1001 and -1004(c), or, if they had, I am sure that Justice George Rose Smith, the author of *Wurst*, would have agreed Wurst would have had twenty, not ten days, to intervene in the local option contest involved there. However, if one is unconvinced by that position and believes the ten-day requirement was upheld as law in *Wurst*, I certainly have no hesitation in holding the court was wrong.

Finally, while I conclude the twenty-day limitation is controlling and the wets timely filed their complaint, I am still of the opinion that they must show a prima facie case in accordance with the language contained in § 3-1002 of the Code. In other words, the trial court must require the wets to prove that their cause of action is such that the election results should be changed. In this respect, there is little difference between a default action in an election contest from one arising in any civil action.

I regret the court's decision today because I believe it does damage to our election laws. In particular, Arkansas citizens and voters bear an onerous burden, even under the Code, to investigate and confirm the election irregularities that are necessary to file a proper contest within the required twenty-day period—a ten-day period, on the other hand, is an impossible limitation to meet. Here, serious allegations of election fraud have been made and those allegations should either be proved or dispelled. Public interest demands it, or our citizens' faith and confidence in their government will be diminished. Most of the people who were organized on both sides of this issue in Conway County are unquestionably honest and want only an accurate certified vote, devoid of fraud. Our decision does nothing to resolve the most serious questions that underlie this case, and, instead, allows the allegations of fraud to remain unchallenged. At the very least, I believe the prosecutor of the district or the state attorney general should investigate these fraud allegations and resolve them one way or another.

HAYS, J., joins in this dissent.

Supplemental Opinion on Denial of Rehearing
February 8, 1988
744 S.W.2d 386

ROBERT H. DUDLEY, Justice. The petitioners ask for rehearing. Since there is neither an error of fact nor of law in the original opinion, we deny the petition.

The dissenting opinions contend that the majority opinion misconstrues the case of *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972). The original majority opinion states:

> The appellees argue that the interpretation we adopt is inconsistent with our holding in *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972). Our holding in that case is that jurisdiction to try local option election contests is in circuit court. All else is dicta.

The statement is correct. The first paragraph of the opinion in *Henderson* sets out the question that was before the Court: "The question we must resolve is whether the county court had

jurisdiction."

The *Henderson* opinion summarizes its holding very concisely:

> It is therefore our conclusion that Act 108 of 1935 provides that the contest of any local option election should follow the statutes providing for the contest of any election for county officers; and that Act 465 of 1969 provides that the contest for a county office shall be brought in the circuit court.

According to Black's Law Dictionary, "dicta" are statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand, and they lack the force of an adjudication. Thus, the original opinion in this case correctly interprets *Henderson*.

The sentence from *Henderson*, quoted above, which summarizes the holding states that Act 108 of 1935, *the local option act*, provides for resolution of the jurisdictional question by referring to the statutes governing the contest for election of county officers, which is Act 465 of 1969, or the election code of 1969. Thus, the court in *Henderson* only applied the 1969 act by incorporation through the local option act.

The paragraph of the local option statute which governed *Henderson* and also governs the case at bar is as follows:

> 1. *Hearing and determination.* The contest shall be heard and determined by the same board which, by law, is authorized and empowered to hear and determine a contest of an election for county officers; and the same provisions of the statutes shall apply to the contest of any election held under this law as are provided for the contest of any election for county officers, *except as hereinafter provided.*

The first clause of the statute quoted immediately above provides that the contest of a local option election shall be heard by the same court as is authorized to hear the contest of an election for county officers. The last clause of the statute provides that the same provisions of the statutes shall apply to local option

election contests as are provided for the contest of any election for county officers. However, the last clause also provides, "*except as hereinafter provided.*" None of the exceptions which follow in the next section of the statute were material in *Henderson*; but one of them, the requirement that a contest be filed within 10 days, is the crucial point of the case at bar. The exception, quoted in full in the original opinion, governs the case at bar, and mandates holding that a local option election contest must be filed within 10 days.

The petitioners alternatively ask us to modify the mandate in this case from reversed and dismissed to reversed and remanded in order that they might present arguments that the local option election act is unconstitutional. We decline to do so.

■ The appellants' (respondents in this motion) first point of appeal was: "The trial court erred in not dismissing the complaint of the appellees due to the late filing thereof pursuant to Ark. Stat. Ann. § 48-820. The trial court lacks jurisdiction." Their entire argument on the point was devoted to the proposition that the case should have been dismissed. In response to the point the appellee, petitioner here, argued that Ark. Stat. Ann. § 48-820 (Repl. 1977), the local option act, was not applicable and therefore the trial court correctly refused to dismiss the case. In their brief the appellees never once argued that there remained a constitutional issue to be decided by the trial court. The argument is raised for the first time on rehearing. We do not consider a contention advanced for the first time on rehearing. In *Bost* v. *Masters*, 235 Ark. 393, 361 S.W.2d 272 (1962), in a similar denial of rehearing, we wrote:

> In other words, appellee never made the contention, now advanced, in her original brief. We have said on numerous occasions that we do not consider matters, in civil actions, which are not argued in the brief, and any point not argued is deemed waived.

*Id.* at 399-B, 361 S.W.2d at 277 (citations omitted).

Denied.

HICKMAN, HAYS, & GLAZE, JJ., dissent.

PURTLE, J., concurs.

JOHN I. PURTLE, Justice, concurring. The dissent by Justice

Glaze is a little rough even by my standards. However, I do understand the intensity of his sentiment in the matter because he was the chief architect of the election code of 1969. The 1969 election code was an idea whose time had come and the reform legislation replaced a myriad of archaic and overlapping election laws. Justice Glaze believes that this legislation governs all election contests. I too thought the legislature intended to establish a uniform twenty day election contest law. However, in 1985 this court voted 6-0 (I did not participate) in *Wurst* v. *Lowery*, 286 Ark. 474, 695 S.W.2d 378 (1985), that local option election contests must be filed within ten days from certification of the election results.

The *Wurst* opinion, which was written by Justice George Rose Smith, dealt exclusively with the procedure to contest a local option election, which is the issue in the present case. The opinion stated:

> The attempt to intervene is far too late. Wurst could have intervened the day after the election had he been diligent. It is in the public interest that election results become final without delay. We hold that, by analogy, Wurst's time for intervening in the case expired with the lapse of the time allowed for filing a contest of a local option election, which is ten days after the certification of the vote. Ark. Stat. Ann. § 48-820 (Repl. 1977).

The opinion is clear and unambiguous. It is binding precedent and we have a choice of following it or overruling it. We do not have the option of ignoring it completely as has been done on the petition for rehearing.

I have no bias in favor of or against either side in this dispute. The *Wurst* decision is over two years old and has heretofore received little, if any, criticism from the legislature or the legal community. In accordance with *stare decisis*, I feel compelled to follow our latest decision on this issue, *Wurst*. Perhaps the General Assembly will now clarify the issue in a manner which will leave no room for disagreement in future local option election contests.

DARRELL HICKMAN, Justice, dissenting. Traditionally, we only grant a rehearing if we have made a mistake of law or fact,

but it is not against the law for a judge or a court to change its mind, especially when it is perceived a mistake in judgment has been made. We did both in this case—we made a mistake of law and one in judgment. Unfortunately, the court refuses to acknowledge that.

Our whole debate in this case centered on whether the election code of 1969 applied to local option elections. The issue was critical because the petition to contest the election in this case was not filed within 10 days of the election. Under the old local option law, Act 108 of 1935, the contest petition was filed too late; but, if the election code of 1969 governed, it was timely. This whole lawsuit and the resolution of it focused on this one issue. Did the 1969 law apply to local option elections?

A majority of the court members decided the 1969 election code did not govern local option elections. Justice Dudley wrote the majority opinion and based the court's decision on several premises. First, the 1969 election code did not specifically repeal the local option provision and repeal by implication is not favored. Another basis was our decision in *Wurst* v. *Lowery*, 286 Ark. 474, 695 S.W.2d 378 (1985), where we made reference to the ten day provision in the local option act as though it were alive and not repealed.

Justice Glaze wrote a powerful dissent, but he was unable to convince a majority of us that he was right. While I did not join the majority opinion, I agreed with the decision reached, relying on the decision in *Wurst*. Upon reflection, I see that Justice Glaze was right. But perhaps more important, since our decision, Justice Glaze has pointed out a glaring oversight on our part. The answer to our question was literally right under our noses and we all missed it. In fact, a controlling case, *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972), was cited in the majority opinion but dismissed as not controlling because the pertinent language was mere dicta. That is incorrect. In *Henderson*, a unanimous decision, we *held* the election code of 1969 did apply to local option elections. That's the issue in this case. How could we make such a mistake? That's the kind of blunder judges have bad dreams about—citing a case for one proposition while it holds exactly the opposite. The majority opinion is simply wrong in its treatment of *Henderson* and there is no room to quibble about it.

*Wurst*, decided 13 years after *Henderson*, did not mention *Henderson*, probably for the simple reason that the *Wurst* language was indeed dicta and not a holding. It was an inexcusable mistake on our part. How or why we made it is immaterial at this point. What we do about it is all that matters.

I assumed that we, the court, would readily acknowledge the error and correct it. But that is not to be. The decision and opinion will stand. Consequently, I have to write this dissent.

The issue in *Henderson* was whether a provision, which is a part of the local option act, was governed and indeed changed by the new election law. The local option law said contests would be filed in county court. The 1969 election code said contests would be filed in circuit court. We *held* in *Henderson* that the new election law applied, even though no mention was made in the 1969 law that it was intended to govern local option elections. We said in *Henderson* that had the legislature intended to exclude local option elections, it would expressly have done so.

In the majority opinion in this case, we hold exactly the opposite: if the legislature had intended the new act to govern local option elections, it would have specifically repealed those provisions. How could two decisions be more clearly in conflict? *Henderson* holds without question exactly contrary to what our decision is in this case, and we refuse to acknowledge it. While this is an embarrassment, we ought to unhesitatingly correct our mistake, acknowledge *Henderson*, overrule *Wurst*, and send this case back for a trial.

It matters not what I think *Henderson* stands for or what the majority thinks it says. It speaks for itself. If there was the slightest chance I thought my judgment was wrong, I would be silent, because this kind of mistake and, more especially the refusal by the court to correct it, reflects upon the integrity of the court.

HAYS, J., joins in the dissent.

STEELE HAYS, Justice, dissenting. While I agree with the dissenting opinions I feel the need to add my own views to the several being expressed. I read the opinion of Justice Lyle Brown in *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972) as precedent for this case. In *Henderson* this court held that the

circuit court had jurisdiction to try wet-dry elections. Why? Because under the provisions of Act 456 of 1969 a contest of local option elections was removed from county court and placed in circuit court. There were no dissents to that holding and it binds us now, or should.

*Wurst* v. *Lowry*, 286 Ark. 474, 695 S.W.2d 378 (1985) is not precedent for this case. In *Wurst* we held that an attempt in April 1984 to intervene in a local option election contest held in *November, 1980* was "far too late." We simply drew an *analogy* to the time allowed for contesting local option elections, which we mistakenly said was ten days, rather than twenty days. That was plainly dictum, the holding of the case being that a belated intervention years after the election was 1) too late and 2) without merit. That decision in no sense governs the case at hand. I respectfully dissent from the denial of rehearing.

TOM GLAZE, Justice, dissenting. The majority members' decision in this case will assuredly become known as one of this high court's all-time worst. How is a decision relegated to such an abysmal distinction? Because only a few decisions are so bad that they obtain such infamous distinction, I feel compelled to provide the reader with the criteria that qualify opinions for this lowly status. In order to qualify, an opinion must meet all of the following three tests.

I. THE DECISION MUST FAIL TO FOLLOW PRECE-DENT WITHOUT SAYING SO, ERADICATE THE EX-ISTING LAW (AS IT IS GENERALLY KNOWN) AND REPLACE THAT LAW WITH A WORSE RULE OF LAW IN ITS STEAD.

Since my earlier dissent details how the majority opinion totally "missed" the law that controls this case, I merely summarize those points which serve to meet the first test set out above. In one fell swoop, the majority members' opinion (1) ignored precedential authority without an acknowledgment of having done so, (2) caused irreparable damage to Arkansas's Election Code which was intended to furnish the mechanics to hold and conduct elections in this state, (3) readopted a 1935 election procedure which makes it virtually impossible for voters to contest voter fraud allegations in local option elections, (4) buried allegations of wholesale fraud in a recent county-wide

local option election, and (5) placed in issue the constitutionality of any called election held for the purpose of allowing citizens to vote on questions involving issues such as bonds, millages, initiatives or referendums, just to name a few.

## II. THE DECISION MUST WANT IN FUNDAMENTAL LEGAL SCHOLARSHIP, WHICH ACTUALLY CAUSES AN ERRONEOUS RESULT TO BE REACHED BY THE COURT.

This criterion is undoubtedly the most embarrassing, especially for appellate judges whose stock and trade is to write clear and concise opinions to resolve peoples' legal disputes. Even so, the majority's opinion surely qualifies.

The essence of this case is whether the 1969 Election Code applies to local option election contests. In 1972, this court held the Code does cover such contests. *Henderson* v. *Anderson*, 251 Ark. 724, 475 S.W.2d 508 (1972). The issue in *Henderson* was simple: Must local option election contests be filed in the county court under the 1935 local option law or in the circuit court, as provided by the 1969 Code? I quote the court's answer:

> It is therefore our conclusion that Act 108 of 1935 provides that the contest of any local option election should follow the statutes providing for the contest of any election for county offices; and that Act 465 of 1969 [Election Code] provides that the contest for a county office shall be brought before the circuit court. (Bracketed insertion mine.)

*Id.* at 726, 475 S.W.2d at 509.

The majority members, in their opinion, simply ignore the *Henderson* court's holding that applied the 1969 Election Code to local option elections. They did so saying, of all things, that everything in the *Henderson* opinion was dicta, except that part which stated that local option contests must be filed in circuit court. I can only say that such an explanation reveals a want of basic scholarship of the law—as I know it, at least. Obviously, the *Henderson* court's holding required its threshold decision that local option election contests are controlled by the 1969 Election Code. Frankly, if I were asked to give the family law students I instruct an example of an opinion which employed dicta, I

certainly would not embarrass myself by citing the *Henderson* case, as the majority members have done in this case.

In their opinion denying rehearing, the majority members make one last ditch effort to rationalize their failure to follow *Henderson* and, in doing so, add still another glaring error to those I have already set out in my earlier dissent. Today, the majority says, ". . . [T]he court in *Henderson* 'only' applied the 1969 Act by incorporation through the local option act." This statement simply is not true. In fact, the court applied the 1969 Election Code because of a repealer provision set forth in Ark. Stat. Ann. § 3-1004(c) (Repl. 1976), which I discuss in point III below. The *Henderson* court made specific note of § 3-1004 having been cited and argued to support the contention that the county court had no jurisdiction of the election contest. The court then stated unequivocally that it agreed with that contention. *Id.* at 725-726, 475 S.W.2d at 509.

III. THE DECISION MUST REQUIRE ACTION BY THE ARKANSAS GENERAL ASSEMBLY TO ENACT REMEDIAL LEGISLATION TO CORRECT THE ERROR OF LAW CONTAINED IN THE COURT'S OPINION.

This court, at times, is requested to unravel problems that have resulted from poorly drafted legislation. That is not the situation at hand. In fact, the *Henderson* decision made it clear that the 1969 Election Act's title reflected that it covered local option elections and that one of the Act's provisions, Ark. Stat. Ann. § 3-1004 (Repl. 1976), specifically provided that other election contest laws—than those contained in the Act—were of no further force or effect.

In conclusion, because of the decision reached by this court's majority, controversy and confusion will ensue. In the majority members' view, the 1969 Election Code does not apply except to elections involving candidates, not issues. The state, counties and municipalities are left with no laws or election apparatus by which they can conduct issue-oriented elections. The Governor and the Arkansas General Assembly must now correct this absurdity, which is a direct result of the majority's decision in this case.

Because of the appellant's petition for rehearing, the major-

ity members have been given a chance to avoid the infamy their opinion so clearly invites. The petition should be granted, and the court should remand this case for the appellees to show a prima facie case that the election results should be changed.[1]

HAYS, J., joins in this dissent.

---

[1] Justice Purtle has added his concurrence and refers to *Wurst* v. *Lowery*, 286 Ark. 274, 695 S.W.2d 378 (1985) as being controlling here. As I pointed out in my earlier dissent, the *Wurst* case did not deal with the issue now before us, of whether the 1969 twenty-day contest provision superseded the prior 1935 ten-day provision. *See Garrett* v. *Andrews*, 294 Ark. 160, 168, 741 S.W.2d 257 (1987) (Glaze, J., dissenting). The only value the *Wurst* decision has in this case is to serve as a red herring; that decision surely offers no precedent or justifiable comfort for any member of this court to reach the holding the majority reached in this cause.