Moma Louise ARMSTRONG d/b/a Moma Lou's, Edward L. Wilson, Frederick E. Burgener, Larry Joe Hensley, Deonne Jeneen Stillwell, John Ed Hickey, Brutus Development, Inc., d/b/a John's Liquor, Appellees,

v.

T.O. ADAMS, Johnny Desalvo, Jim Garrett, Appellant,

Harold Bryant, Coy Bryant, Avis Cranford, Ralph W. Bryant,

Janelle Bartlett, Appellant,

Farrell Bradshaw, Judy Barker, Clyde Ruff, Othello Gordon, Clevalea Charton, Garland G. Jackson, Sharon Quinn, Doris M. Crowder, Melvin Crowder, James H. Gist, Euna Faye Jackson, Louis Charton, Appellants,

John Does Nos. 1 through 25; all in their individual and official capacities as Conway County Election Officials, Appellants.

Robert S. Moore, Jr., Individually & in his official capacity as Director of the Alcoholic Beverage Control Division, Jack Boles, Individually & in his official capacity as Director of the Alcoholic Beverage Control Enforcement Division, Eudell Huett, Faye Sims, Bill Harwood.

No. 89–1171.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 14, 1989.

Decided March 8, 1989.

M. Watson Villiens, II, Conway, Ark., for appellant.

William Wilson, Jr., Little Rock, Ark., for appellees.

Before JOHN R. GIBSON and FAGG, Circuit Judges, and HEANEY, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

This appeal arises from the settlement of claims, brought under 42 U.S.C. §§ 1973a, 1983, 1985, and 1988, which alleged that various election officials committed fraudulent and racially discriminatory acts in order to influence the outcome of a local option election. A group of "wets" brought this action challenging the election in Conway County, Arkansas on November 4, 1986, which by a narrow margin banned the sale of alcoholic beverages. After substantial discovery and three days of trial, the district court[1] substituted as defendants the current members of the Conway County Board of Election Commissioners in place of the former Board. Shortly thereafter, a settlement was reached between the "wet" plaintiffs and the current Board, which calls for resubmission of the wet/dry issue in a special election to be held on May 9, 1989. The former Board members, dismissed as defendants before the court approved the settlement, now appeal. They attack the court-approved settlement, arguing that the district court lacked subject matter jurisdiction, that the court erred in dismissing them as defendants, and that the settlement is illegal because under Arkansas law the election commissioners lack authority to call a new election. We conclude that the district court had jurisdiction and that these appellants lack standing to

---

1. Honorable George Howard, Jr., United States District Judge for the Eastern District of Arkansas.

attack the settlement. We therefore affirm the judgment of the district court.

## I.

Conway County's hotly contested election ended with a vote of 4,574 against allowing the continued distribution and manufacture of alcoholic beverages and 4,541 in favor. A state court election contest, commenced some two weeks after the election, resulted in a default judgment which voided the election results. On appeal, the Supreme Court of Arkansas reversed, ruling that under Arkansas election laws the contest should have been brought within ten days of the election. Because the state complaint was filed sixteen days after the election, the court ordered that the election contest be dismissed. *Garrett v. Andrews*, 294 Ark. 160, 741 S.W.2d 257 (1987), *cert. denied sub nom. Andrews v. Adams*, —— U.S. ——, 108 S.Ct. 2873, 101 L.Ed.2d 908 (1988).

This action was brought fourteen months later by a group of "wets" consisting of two persons engaged in the business of selling liquor, two qualified voters who voted wet, and two qualified black voters who desired to vote wet but were prevented from doing so. Proceeding under 42 U.S.C. §§ 1973a, 1983, 1985, and 1988, the complaint alleged a variety of fraudulent acts. These acts involved discarding, substituting and altering ballots, stuffing ballot boxes, permitting unauthorized voters to vote dry, allowing some voters to vote twice, and improperly counting ambiguous votes as dry votes. The complaint also alleged that one traditional polling place was moved without notice in an effort to disenfranchise black voters who had traditionally voted wet. Jurisdiction was pleaded under 28 U.S.C. §§ 1331, 1343(a)(3) & (4).

The "wet" plaintiffs soon filed a motion for a temporary restraining order and a preliminary injunction. While one group of defendant election officials did not object to the use of such temporary equitable relief by the district court, the appellants opposed the entry of such orders. The court nevertheless granted the requested relief and restrained state officials from interrupting the distribution or sale of alcoholic beverages in the county pending a final disposition of this case. The "dry" defendants then moved to dismiss the complaint for failure to state a claim, essentially arguing that plaintiffs failed to plead fraud with sufficient particularity. The district court denied this motion, finding the complaint to be adequate as it listed twenty-four specific instances of fraudulent conduct.

Substantial discovery occurred and the case proceeded to trial. After three days of trial, three current members of the Conway County Board of Election Commissions, Faye Simms, Eudell Huett and Bill Harwood, were substituted under Fed.R. Civ.P. 25(d)(1) as defendants in place of former Board members T.O. Adams, Jim Garrett and Johnny DeSalvo, who were retained as defendants in their individual capacities. The same day, the current Board and the "wet" plaintiffs presented to the district court for approval a proposed settlement order. In the settlement, the Board agreed to resubmit the wet/dry issue in a new election on May 9, 1989, to be conducted with voting machines and supervised by the United States Marshall. Plaintiffs agreed to pay for the cost of the election and waived all claims for attorneys' fees and costs.

Approving the settlement, the court dismissed under Fed.R.Civ.P. 41(a) all defendants except members of the current Board, and entered the settlement order. The court retained jurisdiction in order to implement the settlement agreement, and the following day it entered a second order making specific directions regarding the May 9 election.

The appellants, all defendants who were dismissed immediately before the settlement was approved, then moved to set aside the settlement order and to be reinstated as party defendants. Denying this motion, the district court concluded that they did not have standing to object to the settlement and to seek reinstatement. It found that the appellants had not demonstrated plain legal prejudice flowing to

them as a result of their dismissal, that the settlement was fair and proper, and that the parties had a right to agree to a remedy which could have been imposed by the court. The district court also observed that the vast majority of the initial defendants preferred a new election to a trial, while the remaining defendants, appellants here, favored a new election only if a full trial revealed evidence of improprieties. We expedited this timely appeal.

## II.

■ Appellants argue that the district court lacked jurisdiction because no federal question was properly before it. The complaint, however, set forth specific allegations of fraud and averred that these allegations demonstrated violations of federal law. It further alleged that certain discriminatory practices were aimed at black voters.[2] In order for a court to have subject matter jurisdiction, the pleading must on its face state a cognizable claim for relief, and in a section 1983 action the plaintiff must be able to point to specific articulable constitutional rights that have been transgressed. *Mount Healthy School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 278–79, 97 S.Ct. 568, 571–72, 50 L.Ed.2d 471 (1977); *Bell v. Hood,* 327 U.S. 678, 682 (1946); *Landrum v. Moats,* 576 F.2d 1320, 1324 (8th Cir.), *cert. denied* 439 U.S. 912, 99 S.Ct. 282, 58 L.Ed.2d 258

(1978). The Fourth Circuit has observed that jurisdiction is typically determined at the outset of litigation from a plaintiff's complaint, and that a court only occasionally must further investigate the merits of an action to ascertain its jurisdiction. *Houston v. Murmansk Shipping Co.,* 667 F.2d 1151, 1154 (4th Cir.1982).

■ We do not see in the record before the district court a specific challenge to its jurisdiction that would require such further factual inquiry. The record before us, conversely, reveals that when the district court approved the settlement it expressly retained jurisdiction to issue further orders. When appellants moved to set aside the settlement and be reinstated as defendants, the court denied relief, and, after having heard three days of evidence, made statements strongly supporting its jurisdiction. The court recognized that under federal law it had authority to order a federally supervised election.[3] Had appellants objected more specifically to jurisdiction in the district court, we have no doubt that the court would have made its conclusions in this respect more specific. As they stand, however, the district court's conclusions demonstrate to us that the court approved the settlement premised on its authority to impose a federal remedy. This is an exercise of jurisdiction and we cannot

**2.** In denying plaintiffs' Rule 12(b)(6) motion to dismiss the complaint for failure to state a claim, the district court stated:

The Court is persuaded that, upon reviewing the allegations, plaintiffs have pleaded fraud with the requisite degree of specificity. *See* Rule 9(b) of the Federal Rules of Civil Procedure. It is also clear that the complaint meets the remaining elements of the *Donohue* test in that plaintiffs contend that defendants' unlawful behavior was intended to deprive qualified voters of their constitutionally protected right to vote, that the actions were committed by persons acting under color of law and that defendants' actions changed the outcome of the election.

(Citing *Donohue v. Board of Elections of State of New York,* 435 F.Supp. 957, 968 (E.D.N.Y.1976).)

**3.** In its order of January 17, 1989, the district court stated:

The Court finds that the settlement is proper and fair under the circumstances and that

current election commissioners had authority to enter into the settlement agreement. As dismissed defendants correctly assert, the Court could have ordered a federally supervised election under federal law. The election commissioners certainly had the power to agree to a remedy which could have been imposed by the Court. *See Bell v. Southwell,* 376 F.2d 659, 665 (5th Cir.1967) ("In this vital area of vindication of precious constitutional rights, we are unfettered by the negative or affirmative character of the words used or the negative or affirmative form in which the coercive order is case. If affirmative relief is essential, the Court has the power and should employ it."); *Ketchum v. City Council of City of Chicago, Ill.,* 630 F.Supp. 551, 565 (N.D.Ill. 1985) ("Federal courts have often ordered special elections to remedy violations of voting rights. Prospective relief alone is 'of little consequence to the many voters who sought to vote ... and could not do so effectively.' ").

conclude that it was in error.[4]

■ Appellants also argue that the district court erred in dismissing them as defendants. To set aside a voluntary dismissal under Fed.R.Civ.P. 41(a), they must demonstrate plain legal prejudice arising from the dismissal. *Hoffman v. Alside,* 596 F.2d 822, 823 (8th Cir.1979) (per curiam). The district court, relying upon *Hoffman,* ruled that legal prejudice is not shown by the fact that the dismissed appellants were deprived of an opportunity to put on their case. We have no doubt that the district court correctly ruled on the issue and determined that after they had been dismissed as defendants the appellants had no standing to object to the settlement. The district court observed that the settlement did not violate Arkansas public policy and that the interests of the citizens of Conway County in having fair elections, unhampered by allegations of widespread fraud, supported the decision of the current election commissioners that a new election was necessary.

■ The idea of settlement presupposes that litigation will not be concluded. The termination of adversarial confrontation is indeed the very purpose of settlement. The district court did not err in its conclusion that the election commissioners had the power to agree to a remedy which could have been imposed by the court. Any limitation of power imposed by state law on the Board of Election Commissioners is vitiated by the authority of the district court to remedy constitutional violations that may have occurred during the election. The settlement of these issues is beyond the power of these appellants to reach.

We affirm the judgment of the district court.

**4.** The parties have not furnished to us a transcript of the hearing, but in our view the order of the district court is sufficient for us to conclude that there is jurisdiction.