Brian M. WEIDRICK *v.* James A. ARNOLD, M.D. and
Springdale Memorial Hospital

91-364                                           835 S.W.2d 843

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Raymond C. Smith, P.A.*, by: *Raymond C. Smith*, for appellant.

*Bassett Law Firm*, by: *Walker Dale Garrett*, for appellee Arnold.

*Davis, Cox & Wright*, by: *Don A. Taylor* and *Walter B. Cox*, for appellee Springdale Memorial Hospital.

ROBERT L. BROWN, Justice. The appellant, Brian M. Weidrick, failed to comply with the sixty-day statutory notice requirement prior to filing a medical malpractice complaint. *See* Ark. Code Ann. § 16-114-204 (1987, Supp. 1991). Based on this non-compliance, the Washington County Circuit Court granted summary judgments in favor of the appellees, Dr. James A. Arnold and Springdale Memorial Hospital. The single point on appeal is whether Rule 3 of our Rules of Civil Procedure regarding commencement of actions superseded this statutory provision. We hold that it did, and we reverse the summary judgments and remand the case for a trial on the merits.

Dr. Arnold performed a bilateral meniscectomy and reconstructive surgery on the appellant at the appellee hospital on December 2, 1988. He was released on the following day, December 3, 1988. After a series of follow-up examinations, the appellant went to another physician on January 13, 1989, who discovered a deep-pocket open-wound infection that has resulted in physical limitations. On December 3, 1990, exactly two years after the appellant's release from the appellee hospital, the appellant filed a medical malpractice lawsuit against the appel-

lees. The commencement of the action was just within the two-year limitation period imposed on malpractice suits by Ark. Code Ann. § 16-114-203(a) (Supp. 1991). No sixty-day notice was given within the two years or prior to commencement of the action as required Code Ann. § 16-114-204.

On December 11, 1990, the appellant sent to both appellees, by regular mail, a notice of intent to sue. Service of summons was obtained on April 1, 1991. The appellee hospital moved for summary judgment on April 5, 1991, followed by the same motion from Dr. Arnold on April 16, 1991. Both appellees asserted that the appellant had failed to comply with Ark. Code Ann. § 16-114-204(a) which provides:

> No action for medical injury shall be commenced until at least sixty (60) days after service upon the person or persons alleged to be liable, by certified or registered mail to the last known address of the person or persons allegedly liable, of a written notice of the alleged injuries and the damages claimed.

At the hearing on the motions on June 5, 1991, the appellant argued that Ark. R. Civ. P. 3, which governs the commencement of civil actions, superseded the sixty-day notice requirements of Ark. Code Ann. § 16-114-204. Rule 3 states: "A civil action is commenced by filing a complaint with the clerk of the proper court who shall note thereon the date and precise time of filing." The circuit court relied on our previous holding in *Jackson* v. *Ozment*, 283 Ark. 100, 671 S.W.2d 736 (1984) and found that Rule 3 did not supersede the sixty-day notice statute.

On appeal, the appellant urges this court to reexamine the supersession argument as we said we would do in *Dawson* v. *Gerritsen*, 290 Ark. 499, 720 S.W.2d 714 (1986).

We begin by examining the history of the sixty-day notice statute, the subsequent cases interpreting it, and the Arkansas Rules of Civil Procedure. Act 709 of 1979, now codified as Ark. Code Ann. § 16-114-201, *et seq.* (1987 and Supp. 1991), was a comprehensive act enacted for the purpose of governing actions for medical injury. One facet of that enactment was section five, which provided the sixty-day notice to sue as a condition before commencing an action for medical injury. Act 709 contained an

emergency clause which stated that the threat of legal action had caused increased rates for malpractice insurance and that the Act "should be given effect immediately to help control the spiralling cost of health care." The Act was signed into law on April 2, 1979.

Before the enactment of Act 709, this court adopted the Arkansas Rules of Civil Procedure under the authority set forth in Act 38 of 1973 and this court's own constitutional and inherent power to regulate procedure in the courts, but the civil rules did not become effective until July 1, 1979, which was after the enactment of Act 709. *Re: Rules of Civil Procedure*, 264 Ark. 964 (Per Curiam Dec. 18, 1978).

We adopted the Supersession Rule as part of the civil rules which provides that all laws in conflict with the civil rules and the Rules of Appellate Procedure, and the Rules for Inferior Courts are superseded.

Rule 3 of the Arkansas Rules of Civil Procedure provides for commencement of civil actions. As first adopted, it stated that an action was commenced by filing a complaint and obtaining service within sixty days of filing. Rule 3 was amended in 1983 to eliminate the service requirement for commencement and to provide, as quoted above, that filing a compliant with the clerk of the proper court is all that is required to commence a civil action. *In Re: Amendments to the Rules of Civil Procedure*, 279 Ark. 470, 651 S.W.2d 63 (Per Curiam 1983).

Also, in 1983, this court refused to hold that Act 709 was arbitrary or a violation of the Equal Protection Clause or constituted special legislation. *See Gay* v. *Rabon*, 280 Ark. 5, 652 S.W.2d 836 (1983). In holding that the Act was constitutional, we observed that there was a rational basis for the notice requirement. We did not consider the supersession issue in that case because it was not raised before the trial court.

In 1984, we considered two notice cases: *Simpson* v. *Fuller*, 281 Ark. 471, 665 S.W.2d 269 (1984) and *Jackson* v. *Ozment*, 283 Ark. 100, 671 S.W.2d 736 (1984). In both cases, we affirmed the constitutionality of the sixty-day notice statute, but in *Jackson* we went further and held that Rule 3 did not supersede the notice requirements which "simply adds an additional step to the proper commencement of a medical injury case provided

under ARCP Rule 3." *Jackson*, 283 Ark. at 101-103, 671 S.W.2d at 738.

Two related decisions followed in 1986 and 1988: *Dawson* v. *Gerritsen*, 290 Ark. 499, 720 S.W.2d 714 (1986) (*Dawson I*); *Dawson* v. *Gerritsen*, 295 Ark. 706, 748 S.W.2d 33 (1988) (*Dawson II*). In *Dawson I*, we observed that the supersession issue had not been raised in that case, and we announced our intention to reexamine our holding in *Jackson* v. *Ozment* at the next opportunity. In *Dawson II*, supersession was apparently not an issue because it was not discussed in the decision. However, in deciding whether to award attorney fees against the losing plaintiff and in favor of the doctor and the hospital involved, we noted that the sixty-day notice requirement was "manifestly harsh" and "an obvious hardship, the equal of which may not exist elsewhere in the law." *Dawson II*, 295 Ark. at 211, 738 S.W.2d at 35.

In 1989 and 1990, we confirmed the point that plaintiffs had to comply literally and strictly with the notice requirement in order to commence a civil action for medical injury. *Cox* v. *Bard*, 302 Ark. 1, 786 S.W.2d 570 (1990); *Ofili* v. *Osco Drug, Inc.*, 300 Ark. 431, 780 S.W.2d 11 (1989). In neither case was supersession discussed.

■ Now we are directly confronted with the supersession issue for the first time since *Jackson* v. *Ozment, supra*. In reviewing the history of the civil rules, it is manifest and clear that we intended for Rule 3 to govern commencement of all civil actions. These actions are commenced by filing a complaint with the clerk of the proper court. The sixty-day notice requirement adds an additional condition for commencing a civil action for medical injury and is directly at odds with Rule 3. Our holding in *Jackson* v. *Ozment, supra*, that this did not represent a conflict in civil procedure was error, and we overrule *Jackson* v. *Ozment* on that point.

■ The Arkansas General Assembly granted to the Arkansas Supreme Court the power to prescribe from time to time rules of pleading, practice, and procedure with respect to all proceedings in civil cases in all courts of this state. Act 38 of 1973, now codified as Ark. Code Ann. § 16-11-302 (1987). The Arkansas Constitution further endows this court with "general

superintending control over inferior courts of law and equity."
Ark. Const. art. 7, § 4. General superintending control includes
the power to adopt rules of procedure in civil cases. There is no
question that the power to adopt civil rules of procedure is well-
established and grounded in constitutional and statutory author-
ity as well as this court's inherent authority.

■ Both appellees contend that Ark. R. Civ. P. 81(a)
carves out an exception to this court's rulemaking authority. Rule
81(a) reads:

> These rules shall apply to all civil proceedings cogni-
> zable in the circuit, chancery and probate courts of this
> state except in those instances where a statute *which
> creates a right, remedy or proceeding* specifically provides
> a different procedure, in which event the procedure so
> *specified* shall apply. (Emphasis ours.)

The appellees offer no interpretive authority to support their
position. Accordingly, it is left to this court to determine what is
meant by a statutorily created right, remedy or proceeding and
whether that exception applies to civil actions for medical
malpractice.

We first observe that an action for medical malpractice did
not originate as a right, remedy, or proceeding created legisla-
tively; it had its origins at common law. Prosser in his distin-
guished treatise on torts refers to an article that traces the history
of medical malpractice. Prosser, *Law of Torts*, § 32, p. 161, fn. 32
(4th Ed. 1971). That article traces the first recorded case back to
the fourteenth century:

> The professional liability of the medical practitioner
> is almost as old as personal injury actions. This first
> recorded case in Anglo-American law goes back to the year
> 1374 when one J. Mort, surgeon, undertook to treat a
> wounded hand and allegedly acted in such a negligent
> manner as to maim the hand. While the action against the
> surgeon was dismissed because it was brought in "trespas
> sur son case" rather than in trespass vi et armis, the court
> indicated that if the surgeon had done as well as he was
> able and had employed all his diligence in administering to
> the patient, "it is not right that he should be held culpable,"

reflecting the standard of care suggested by the Hippocratic Oath.

McCoid, The Care Required of Medical Practitioners, 12 *Vand. L. Rev.*, 549, 550 (1959).

■ In this same vein, Arkansas has recognized the common law action for medical malpractice and did so long before the enactment of Act 709 in 1979. *See, e.g., Farrier* v. *Trammel,* 207 Ark. 372, 18 S.W.2d 818 (1944); *Gray* v. *McDermott,* 188 Ark. 1, 64 S.W.2d 94 (1933); *Plunkett* v. *Hays,* 180 Ark. 505, 21 S.W.2d 851 (1929); *Dorr, Gray & Johnston* v. *Fike,* 177 Ark. 907, 9 S.W.2d 318 (1928); *Spears & Purifoy* v. *McKinnon,* 168 Ark. 357, 270 S.W.2 524 (1925). Thus, we can conclude without hesitancy that medical malpractice actions are not creatures of statute but are rooted in the Anglo-American common law.

■ Though the civil cause of action for medical malpractice was grounded in the common law, the Arkansas General Assembly enacted Act 709 of 1979, which provides a procedural scheme for medical malpractice actions, including the sixty-day notice, as a prerequisite to commencing a civil action. The question posed for our consideration is whether, by so doing, the legislature created a statutory right, remedy, or proceeding as contemplated by the Rule 81(a) exception. We hold that it did not.

What this court intended when it adopted the civil rules, and Rule 82 in particular, was to except from the rules *special proceedings* created by statute which established different procedures from those applicable to civil actions. We said as much in a recent local option election case where the statutes providing the procedure for local option elections were in seeming conflict with our default rule, Ark. R. Civ. P. 55:

> The Arkansas Rules of Civil Procedure apply to civil actions. ARCP Rule 2. A civil action is an ordinary proceeding by one party against another for the enforcement or protection of a *private* right or redress or prevention of a *private* wrong. Ark. Stat. Ann. § 27-106 (Repl. 1979). Every other remedy is a special proceeding. Ark. Stat. Ann. § 27-107 (Repl. 1979). Therefore a local option election contest is a special proceeding, and it is not

necessary that all of the rules of civil procedure be applied. *See Reed* v. *Baker,* 254 Ark. 631, 495 S.W.2d 849 (1973).

*Garrett* v. *Andrews,* 294 Ark. 160, 167, 741 S.W.2d 257, 260 (1987), *cert. denied sub nom. Andrews* v. *Adams,* 487 U.S. 1219 (1988).

Over the years, this court has referred to multiple special proceedings created by statute which do not constitute civil actions. *See, e.g., Brantley* v. *Davis,* 305 Ark. 68, 805 S.W.2d 75 (1991) (a proceeding to probate a will is a special proceeding under the Probate Code); *Travelodge International, Inc.* v. *Handleman National Book Co.,* 288 Ark. 368, 705 S.W.2d 440 (1986), *cited with approval, May* v. *Bob Hankins Distrib. Co.,* 301 Ark. 494, 785 S.W.2d 23 (1990) (garnishment is a special statutory procedure); *Liles* v. *Hill,* 268 Ark. 106, 594 S.W.2d 836 (1980) (election contests are special proceedings authorized only in accordance with constitutional or statutory provisions); *Coleman* v. *Coleman,* 257 Ark. 404, 520 S.W.2d 239 (1974) (a will contest is not a civil action where the civil code applies but instead a special proceeding where the right to contest is governed by the Probate Code); *Mack Trucks of Arkansas, Inc.* v. *Yarbrough,* 251 Ark. 618, 473 S.W.2d 889 (1971) (action in replevin is a special proceeding fixed by statute for possession of property); *State* v. *Snow,* 230 Ark. 746, 324 S.W.2d 532 (1959) (commitment of a tubercular person under the Act is neither a civil nor criminal proceeding but a special proceeding); *Beaver Bayou Drainage Dist.* v. *Lee-Phillips Drainage Dist.,* 221 Ark. 550, 254 S.W.2d 465 (1953) (petition to levy tax to improve ditches is a special proceeding within the jurisdiction of the county court); *Burton* v. *Ward,* 218 Ark. 253, 236 S.W.2d 65 (1951) (statutory proceeding to condemn land is a special proceeding for the purpose of determining compensation to the owner). *Velvin* v. *Kent,* 198 Ark. 267, 128 S.W.2d 686 (1939) (the changing of a county seat is a special proceeding and regarded as such by the legislature and judiciary); *Bullion* v. *Pope,* 192 Ark. 959, 96 S.W.2d 465 (1936) (statute provides a special proceeding for protection of the assets of an insolvent insurance organization and is the exclusive method for determining solvency of such companies); *Ex parte Kelley,* 191 Ark. 848, 88 S.W.2d 65 (1935) (Juvenile Court Act provides a special proceeding for committing a child to reform school and must be followed).

■ A Reporter's Note to Rule 81(a) provides this commentary on the Rule 81(a) exception: "The exception would be those proceedings established by statute and the statute prescribes a different procedure." That is precisely correct. The Rule 81(a) exception is limited to special proceedings created exclusively by statue where a special procedure is appropriate and warranted. It was never the intention of this court to accede to the General Assembly on matters of civil procedure for civil actions.

This principle is evidence by a case where we refused to apply a statutory procedure regulating the content of a complaint for collection of a debt when the statue ran counter to Ark. R. Civ. P. 8. *See Borg-Warner Acceptance Corp.* v. *Kesterson*, 288 Ark. 611, 708 S.W.2d 606 (1986). In doing so, we held the statute was superseded by Rule 8:

> ARCP Rule 8 sets out the required content of a complaint and of an answer. It is a rule of procedure and not a matter of substantive law. Ark. Stat. Ann. § 27-1142 does not conform with ARCP Rule 8, and therefore, it is deemed to be superseded even though it is not so listed in our per curiam order of December 18, 1978. *See Venable* v. *Becker*, 287 Ark. 236, 697 S.W.2d 903 (1985). A suit to collect a debt is not a special proceeding as contemplated by ARCP Rule 81(a), and therefore, it is not subject to a different statute.

288 Ark. at 614; 708 S.W.2d at 607. There is no discernable difference between our holding in *Borg-Warner* and our holding in this case.

We can think of few rules more basic to the civil process than a rule defining the means by which complaints are filed and actions commenced for a common law tort such as medical malpractice. The express intent of the Arkansas Constitution and Act 38 of 1973 is for the governance of the procedure of the courts of this state to fall within the power and authority of the Arkansas Supreme Court. How civil actions are commenced is fundamental cog in that procedural wheel.

■ We hold, therefore, that Rule 3 directly conflicts with and supersedes Ark. Code Ann. § 16-114-204 (1987, Supp. 1991) with respect to the commencement of civil actions. We reverse the

summary judgments in favor of the appellees and send this matter back to circuit court for a trial on the merits.

Reversed and remanded.

HAYS, J., dissents.

STEELE HAYS, Judge, dissenting. I respectfully dissent from the Court's holding today for three reasons: (1) this issue was decided eight years ago and today's overruling of *Jackson* v. *Ozment*, 283 Ark. 100, 671 S.W.2d 736 (1984) significantly detracts from the doctrine of *stare decisis*; (2) the Court today violates the separation of powers of the Arkansas Constitution when it holds that a court-imposed Rule of Civil Procedure preempts a statute enacted by the legislature after the court promulgated the Rules; and (3) the Court misconstrues the application of Ark. R. Civ. P. 81(a) to Ark. Code Ann. § 16-114-204 (1987). I write not because the individual statute, Ark. Code Ann. § 16-114-204, warrants the attention but because I believe the Court today arrogates to itself the prerogatives of the legislature.

## I. STARE DECISIS

As the majority notes, we held that Ark. R. Civ. P. 3 ("Rule 3") did not supersede or preeempt Ark. Code Ann. § 16-114-204 ("§ 16-114-204"). *Jackson* v. *Ozment, supra.* The issue in this case was squarely presented in *Jackson*: whether Rule 3, as amended in 1983, superseded the statute enacted in 1979. We held that it did not.

In *Dawson* v. *Gerritson*, 290 Ark. 499, 720 S.W.2d 714 (1986) ("Dawson I"), we indicated a willingness to reexamine our holding in *Jackson. Jackson* and a related case, *Simpson* v. *Fuller*, 281 Ark. 471, 665 S.W.2d 269 (1984), were the products of a sharply divided court, perhaps leaving an impression that the underpinnings of those cases were infirm. But a disposition to reexamine is not a commitment to reverse, merely a proposal to revisit. Six years have elapsed, during which *Cox* v. *Bard*, 302 Ark. 1, 786 S.W.2d 570 (1990) and *Ofili* v. *Osco Drug, Inc.*, 300 Ark. 431, 780 S.W.2d 11 (1989), and *Dawson* v. *Gerritson*, 295 Ark. 206, 748 S.W.2d 33 (1989) ("*Dawson* II") were decided. After reexamination of *Jackson* and its several companion cases, I believe the position of the majority in *Jackson* and *Simpson* was

sound and merits affirmance.

*Stare decisis* is the principal reason for upholding the validity of § 16-114-204 today. *Stare decisis* is a policy of adhering to precedent that gives predictability to the law. To avoid unsettling things, it is fundamental to the common law. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a breakdown becomes unavoidable. *See Parish* v. *Pitts, et al.*, 255 Ark. 1239,1252, 429 S.W.2d 45 (1968). There are limits to the effects of *stare decisis*; precedent may not implicitly govern but should discretely guide the Court. *See, Id.* (citations omitted.) In this case, there is no reason to overturn precedent.

In more than a decade since § 16-114-204 was passed as Act 709, numerous challenges to the act, including constitutional arguments of due process and equal protection have been repelled: *See Gay* v. *Rabon*, 280 Ark. 5, 652 S.W.2d 836 (1983); *Dawson* v. *Gerritson*, 290 Ark. 499, 720 S.W.2d 714 (1986), (*"Dawson* I"); *Dawson* v. *Gerritson*, 295 Ark. 706, 748 S.W.2d 33 (1988) (*"Dawson* II"); *Lambert* v. *Beverly Enterprises, Inc.*, 753 F. Supp. 267 (W.D. Ark. 1990); *Cox* v. *Bard, supra*; *Ofili* v. *Osco Drug, Inc., supra; Jackson* v. *Ozment, supra*; and *Simpson* v. *Fuller, supra.*

There is no manifest injustice here. The facts show that the complaint was filed before notice was served. Upon receiving the "Motion to Dismiss" for failure to serve notice, plaintiff had a clear alternative to defending the motion and could have avoided the problem entirely. Plaintiff could have taken a voluntary nonsuit. Ark. R. Civ. P. 41(a). Plaintiff subsequently could have met the notice requirement, waited sixty days, and refiled suit within the one-year extension of the statute of limitations. *See* Ark. Code Ann. § 16-56-126 (1987). This is precisely the procedure we outlined in *Dawson* I.

Now the majority overrides the Arkansas Legislature, on perhaps the weakest ground available, and holds that the sixty-day notice is nothing more than "a cog in the wheel of civil procedure" and, hence, the prerogative of this court under Rule 3. Today's decision directly overrules a 1984 decision without giving sufficient weight to the need for certainty, uniformity, and finality of result.

## II. *SEPARATION OF POWERS*

I have previously noted my disagreement with the direction of the Court's Separation of powers analysis concerning these issues. I dissented without opinion in *Ricarte* v. *State*, 290 Ark. 100, 718 S.W.2d 488 (1986); and joined in the dissenting opinion in *State* v. *Sypult*, 304 Ark. 5, 800 S.W.2d 402 (1990). I write to further express my disagreement with the direction the Court has taken in such matters.

The statute at issue is more than a mere "procedural cog." Section 16-114-204 cannot be read as a single procedural rule enacted by the legislature. Rather, it is part and parcel of a series of substantive laws that completely supplant the common-law medical malpractice action. In particular, § 16-114-204 must be read in conjunction with § 16-114-203, the statute of limitations in a statutory medical injury case, and § 16-114-205, providing for the elimination of any allegation of damages in the complaint.

I set out the current statutory provisions for clarity, because the Court today invalidates those provisions, not merely the law as it stood when the lower court decided this case. The amended text is underlined:

§ 16-114-204. Notice of intent to sue.

(a) No action for medical injury shall be commenced until at least sixty (60) days after service upon the person or persons alleged to be liable, by certified or registered mail to the last known address of the person or persons allegedly liable, of a written notice of the alleged injuries and the damages claimed. *Provided, service of the written notice of the alleged injuries and damages claimed may also be made by hand delivery.*

(b) If the notice is served within sixty (60) days of the expiration of the period for bringing suit described in § 16-14-203, the time for commencement of the action shall be extended *ninety (90)* days from the service of the notice. *When service is by certified or registered mail, the date of service of the notice shall be the date of mailing of the written notice.*

First, and albeit as an aside, the legislature disagreed with

some of our interpretations of the statute. In order to ameliorate the effects of those decisions, the legislature permitted delivery of the written notice by hand (responding to *Cox, supra*). The legislature also provided that the service date of the notice was the date of mailing the certified or registered letter. Finally, the legislature amended the extension of the statute of limitations from seventy to ninety days.

The statute, then, does several things: When read in conjunction with § 16-114-205, it provides the basis for changing the form of the complaint: damages cannot be specified in the publicly-filed complaint but must be specified in the privately-mailed notice and by subsequent special interrogatory. The Court considered this provision this term. *See Travis* v. *Hook,* 307 Ark. 84, 817 S.W.2d 207 (1991) (reversing circuit court's dismissal without prejudice and holding that amended pleading striking the dollar amount was sufficient, under Ark. R. Civ. P. 15(a) to fulfill the statutory requirement.[1]

The statutory scheme also provides that service of the notice to sue will automatically extend the statutory limitations period. So, for example, one reading of the statute permits a person to mail a notice of intent to sue on the last possible day, i.e., on the 730th day or two full years after the date of the tortious act. Service is complete on mailing and suit may subsequently be filed not less than sixty days later and not more than ninety days later. Another reading of the statute might be that the limitations period actually expired; plaintiff mails a certified letter on the 59th day after the expiration of the statutory limitations period; not less than sixty days later and not more than ninety days later, plaintiff files suit. Thus the language of § 16-114-204(b) (notice "served within sixty days of the expiration" of limitations period) arguably permits the filing of a valid complaint some five (5) months after the expiration of the statutory limitations period. While no one has attempted to argue these interpretations to the Court, such argument would certainly ameliorate the harsh

---

[1] Compared to § 16-114-204, § 16-114-205 is far more intrusive on the Rules of Civil Procedure. Section 16-114-205 represents a partial return to pre-reform days when there were numerous "forms of complaint" and filing the wrong form with the wrong court or for the wrong reason was enough to have the complaint dismissed. This is a purely procedural matter.

consequences of the notice requirements. These are not implausible interpretations given the language of the statute.

The point of this exercise is that the notice requirement cannot be read alone and should not be read so restrictively. The sixty-day notice requirement is clearly more than a mere procedural step in the commencement of an action at law so as to bring it under Rule 3. Mechanically, it is that, of course. But as noted above, it is patently more than that. The notice requirement is an integral part of a statutory scheme intended to alleviate what the General Assembly of Arkansas saw as a matter of critical concern to the people of this state. That concern is forcefully expressed in the emergency clause:

> It is hereby found, determined and declared by the General Assembly that the threat of legal actions for medical malpractice insurance which in turn causes and contributes to an increase in health care costs placing a heavy burden on those who can least afford such increases and that the threat of such action contributes to expensive medical procedures to be performed by physicians and others which otherwise would not be considered necessary and that this Act should be given effect immediately to help control the spiraling cost of health care.

The effect of today's decision is the first step in unraveling the entire statutory scheme. Assuming § 16-114-205 (providing for a complaint without a prayer for a specific amount of damages) remains unchallenged, defendants now have only one means of ascertaining the monetary amount of the prayer in the complaint; that is by filing special interrogatories. Plaintiffs are arguably worse off than they were before: the effect of today's decision reduces the statutory limitations period back to two years from, arguably, as much as two years and five months.

Finally, the Court's interpretation of the statue today conflicts with the interpretation of the statute given by the federal courts in this state. In federal court, purely procedural rules are governed by federal law, not by state law. In *Lambert* v. *Beverly Enterprises, Inc.*, 753 F. Supp. 267, the federal district court applied § 16-114-204 because the court interpreted it as a state substantive law that had to be applied in a diversity case. Were the notice requirement a "mere procedural cog," it would not

apply in federal court at all.

As Justice Darrell Hickman said:

> I question the opinion in this case which contains dictum that could lead to an extension of this court's rule making power. We do not need to extend that power: we need to limit it and use it with careful restraint. That we have not done.

*Curtis* v. *State*, 301 Ark. 208, 216, 783 S.W.2d 47 (1990) (Hickman, J., dissenting). There are some "procedural" elements of the law that are beyond this Court's powers. Statues of limitations are one example. I believe § 16-114-204 does not conflict with this Court's Rules of Procedure any more than statutes of limitations. It conflicts with our Court Rules less so than does § 16-114-205. Yet, the Court today tells the legislature that it may not enact such a statute in the future absent a modification to the state constitution. I cannot agree with the majority on this point.

### III. *APPLICATION OF RULE 81(a)*

The Court today too narrowly construes the application of Ark. R. Civ. P. 81(a) to § 16-114-201 et seq. As discussed above, this is a comprehensive statutory scheme that completely replaces the common-law action for medical malpractice. It regulates the statute of limitations, the content of the complaint concerning allegations of damages, the allocation of burdens of proof at trial, limitations on expert witnesses, the timing of future payments for damages, and the consequences of deliberately false pleadings as well as the notice of intent to sue. Either this entire section must stand together or it must fall. Certainly, though, until today's decision, it was generally understood that the legislature abolished common law actions for medical malpractice.

The majority concludes that the General Assembly cannot do what it attempted to do here because it did not go far enough. The Court leaves open to the General Assembly the possibility that it might adopt mandatory arbitration procedures, as other states have done, or, as the securities industry has done. The court previously noted as much in *Gay* v. *Rabon*:

> We note that recent statutes providing special pretrial

> procedures in medical malpractice actions, such as the mandatory requirement that a claim for medical malpractice be submitted to a review board before filing an action, have been enacted in a number of states and it appears that a majority of courts have upheld them. *Lacey* v. *Green*, 428 A.2d 1171 (Del. Super. 1981) and cases cited therein. Obviously, this precondition is more burdensome and delaying than the 60 day notice in issue here.

*Gay*, 280 Ark. 5, 652 S.W.2d 836, 838. I do not read today's opinion any differently.

I cannot agree that Ark. R. Civ. P. 81(a) can be circumvented by limiting the exception to "special proceedings created exclusively by statute where a special procedure is appropriate and warranted." The majority has redefined Arkansas law by declaring that medical malpractice is still an action at common-law. The holding implicitly moots the entire statutory scheme — not simply the notice requirement — enacted by the legislature to limit common-law liability in medical malpractice actions. The majority opinion certainly goes beyond the issue in this case, and it opens the possibility that none of the statutory modifications to the law of professional liability are valid.

Moreover, the language from the majority opinion quoted above implies that this Court does not consider a "special proceeding" either "approprite" or "warranted" in medical malpractice actions. I cannot agree that this Court may impose its own views as to the "appropriateness" of substantive legislation. Whether or not the statutory scheme is warranted is not a question for this Court; it is solely a question for the General Assembly.

It is a safe prediction that today's decision will at once increase and compound the confusion begun with *Ricarte* and perfected in *Sypult* as to which branch of government has the final word in the enactment of rules of evidence and procedure. For further discussion and for the source of much of this dissent, *see* M. Gitelman & J. Watkins, *No Requiem for Ricarte: Separation of Powers, the Rules of Evidence, and the Rules of Civil Procedure*, 1991 Ark. L. Notes, at 27.

For the foregoing reasons, I respectfully dissent.