McLANE SOUTHERN, INC. *v.* Charlie DAVIS, Director of the Arkansas Tobacco Control Board, and the Arkansas Tobacco Control Board; Warren Wholesale Co., Inc., Tom Fitts Tobacco Co., Inc., Douglas Companies, Inc., Glidewell Distributing Co., Inc., Southern Wholesale, Inc., Ritchie Grocer Co., Inc., Northwest Tobacco and Candy Co., Merritt Wholesale Distributor Inc., and Warehouse Distributing Inc.

05-990 233 S.W.3d 674

Supreme Court of Arkansas
Opinion delivered April 13, 2006

---

*Williams & Anderson, PLC,* by: *Peter G. Kumpe, Jess Askew III,* and *Georgia Robinette,* for appellant.

*Mike Beebe,* Att'y Gen., by: *C. Joseph Cordi, Jr.,* and *Arnold M. Jochums,* Ass't Att'ys Gen., for appellees.

*Lax, Vaughan, Fortson, McKenzie & Rowe, P.A.,* by: *Grant E. Fortson* and *Roger D. Rowe,* for appellee intervenors.

JIM GUNTER, Justice. McLane Southern, Inc. ("McLane"), a Mississippi corporation licensed to do business in Arkansas, is a cigarette wholesaler. On July 17, 2003, McLane filed a complaint against the Arkansas Tobacco Control Board (the "Board"), requesting the circuit court to declare the Unfair Cigarette Sales Act, as amended by Act 627 of 2003 (the "Act"),[1] unconstitutional under the due-process clauses of the Arkansas and United States Constitutions. McLane also requested the court to enjoin the Board from enforcing the Act against it during the pendency of the lawsuit. The circuit court allowed a group of Arkansas cigarette wholesalers to intervene, and a bench trial was held. The circuit court dismissed the complaint, holding that the Act was not unconstitutional. We affirm.

The Act has been in existence since 1951. In 1998, we rejected a facial challenge to the Act, holding that it did not violate due process in *McLane Co., Inc. v. Weiss,* 332 Ark. 284, 965 S.W.2d 109 (1998) (*"McLane I"*).[2] The plaintiff in *McLane I* was McLane Company, Inc., of which McLane is a wholly owned subsidiary. In 2003, the legislature amended certain provisions of the Act.[3] It is principally the amended statutory provisions that McLane is challenging in this case.

McLane's first argument to the circuit court was that the changes to the definitions of cost and the increased presumptive cost of doing business in the Act, coupled with the presumption of predatory intent arising from sales below cost, were irrational, causing the Act to be an unconstitutional violation of article 2, section 8 of the Arkansas Constitution and the Fourteenth Amendment of the United States Constitution. Second, McLane argued

---

[1] Ark. Code Ann. § 4-75-701 *et seq.* (Repl. 2001 and Supp. 2005).

[2] *See also McLane v. Davis,* 353 Ark. 539, 110 S.W.3d 251 (2003) (*"McLane II"*) (holding that a regulation under the Act was arbitrary, ultra vires, and thus unenforceable).

[3] Act 627 of 2003.

that the presumption of predatory intent arising from the mere existence of a rebate unconstitutionally extended beyond the reasonably permissible goals of the statutory scheme. The circuit court rejected both of these claims, finding a rational basis for the amendments to the Act, and ruling that the changes made by Act 627 did not render the amended provisions of the Act unconstitutional. The circuit court also found that a rational basis existed for the anti-rebating provision, and therefore it was not unconstitutional. McLane filed this appeal.

We review questions of statutory interpretation *de novo*. *Landers v. Jameson*, 355 Ark. 163, 132 S.W.3d 741 (2003). All statutes are presumed constitutional, and if it is possible to construe a statute so as to pass constitutional muster, this court will do so. *McLane I*, 332 Ark. at 297, 965 S.W.2d at 114. This statute falls within the General Assembly's police powers to regulate an industry of general public interest. *See Ports Petroleum Co., Inc. v. Tucker*, 323 Ark. 680, 687, 916 S.W.2d 749, 753 (1996). Therefore, we apply a rational-basis standard to review its constitutionality. *See Ports Petroleum Co., supra; McLane I, supra; Landers, supra*. In applying the rational-basis standard, we have stated that,

> [i]t is not our role to discover the actual basis for the legislation. We merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation *is not the product of arbitrary and capricious government purposes*. If we determine that any rational basis exists, the statute will withstand constitutional challenge.

*Landers*, 355 Ark. at 176, 132 S.W.2d at 749-50 (quoting *Jegley v. Picado*, 349 Ark. 600, 634, 80 S.W.3d 332, 351 (2002) (emphasis in original)).

We turn to McLane's first argument. McLane argues that the circuit court erred in holding that the presumption of predatory intent arising from a below-cost sale is constitutional because the definitions of cost in the Act are not a fair prediction of actual cost. Specifically, McLane claims that the 2003 amendments to the cost definitions are arbitrary, capricious, and unrelated to a wholesaler's true cost.

The Act prohibits a wholesaler "with intent to injure competitors or destroy or substantially lessen competition" to sell cigarettes "at less than cost to the wholesaler[.]" Ark. Code Ann. § 4-75-708(a) (Supp. 2005). A wholesaler's sale at less than cost

constitutes prima facie evidence of predatory intent. Ark. Code Ann. § 4-75-708(e) (Supp. 2005). The cost to the wholesaler is the "basic cost of cigarettes" plus the "cost of doing business." Ark. Code Ann. § 4-75-702(5)(A) (Supp. 2005).

We note that we have already determined in *McLane I* that the presumption of predatory intent on the basis of a wholesaler's sale below cost under the Act before the amendment was not a violation of the constitution. We stated that under the "rational connection test," there must be a rational connection between the fact proved — in this case, a below-cost sale — and the fact presumed — that is, predatory intent. *Id.* at 297, 965 S.W.2d at 114. We concluded in *McLane I* that "the statutory scheme under the Unfair Cigarette Sales Act provides for the rational connection between the presumed cost-of-doing business and minimizing-price amounts in the Act . . . and the presumed fact of predatory intent provided." *Id.* Therefore, we entertain McLane's argument only with regard to the changes made to the Act by Act 627 of 2003. The question is, considering those changes, is there still a rational connection between a below-cost sale and predatory intent.

Act 627 of 2003 altered the cost to the wholesaler in two ways. First, it changed the definition of "basic cost of cigarettes" by using gross-invoice cost, instead of invoice cost, and excluding a deduction for trade discounts received by the wholesaler from the manufacturers. Second, it increased the presumed "cost of doing business" from two percent (2%) plus cartage, presumed to be three-fourths of one percent (.75%), for a total of two and three-fourths percent (2.75%) to four percent (4%) of the basic cost of the cigarettes to the wholesaler. *See* Ark. Code Ann. § 4-75-702(1) and (5)(B) (Supp. 2005).

McLane argues that these two changes make the statutory presumption of predatory intent arising from below-cost sales under Ark. Code Ann. § 4-75-708(e) arbitrary and capricious and therefore unconstitutional. Finally, McLane claims that our decision in *McLane I* upheld the constitutionality of this scheme in large measure because of the exceptions to the rule allowing the wholesaler the right to establish a lower or higher minimum price. Now, McLane argues, the Act requires the wholesaler to file with the Board and prove its cost of doing business *before* it sells its product below the statutory floor of 4%. McLane claims that this

change, in addition to the increased presumptive cost of doing business, eliminates the protections we determined were significant in *McLane I*.

First, we set forth our conclusions in *McLane I* supporting our finding that there was a rational connection between a below-cost sale and predatory intent.

> The Act does not make all below-cost sales of cigarettes unlawful, but instead exempts (1) isolated transactions not made in the usual course of business, (2) clearance sales for discontinued items, (3) sales of imperfect or damaged items, (4) sales related to the liquidation of a business, or (5) sales made by a fiduciary acting under the order or direction of a court. *See* § 4-75-703(1)-(5). In addition, § 4-75-704 exempts sales below cost made to meet a competitor's prices. We believe the Intervenors are arguably correct in stating that, once the foregoing exempted sales are removed from consideration, it is rational to conclude that it is more likely than not that other below-cost sales are made for improper purposes.

*Id*. at 297, 965 S.W.2d at 114. Act 627 of 2003 did not change any of these findings. In finding that there were other reasons supporting the Act's presumed-minimum-price amounts in *McLane I*, we found it significant that a wholesaler "has a right under the Act . . . to submit to the Director a request to charge a lesser price[.]" *Id*. We noted that McLane had submitted such a request and obtained approval to charge less. We also recognized that the approval had been challenged and enjoined, but, in spite of this, found that the Act, on its face, afforded due process and was constitutional. *Id*.

The amendments to the Act by Act 627 do not change our conclusion that the Act, on its face, affords McLane due process. We find that a rational basis exists for each of the amendments, and that none of the amendments cause the Act to be unconstitutional. With regard to the exclusion of trade discounts from the definition of "basic cost of cigarettes," the emergency clause of Act 627 states that "confusion has arisen as to the proper application of the Unfair Cigarette Sales Act in light of certain promotional activities of cigarette manufacturers . . . ." The legislature could have determined that the exclusion of trade discounts from the definition of the basic cost of cigarettes might promote a more efficient administration of the Act. This reason provides a rational basis. The party challenging legislation has the

burden of proving that the act is not rationally related to achieving any legitimate objective of state government under any reasonably conceivable state of facts. *Arkansas Hosp. Ass'n v. Ark. State Bd. of Pharmacy*, 297 Ark. 454, 763 S.W.2d 73 (1989). McLane has failed to do this.

■ We also find that there is a rational basis for the legislature's amendment of the presumed cost of doing business from an effective rate of two-and-three-fourth's percent (2.75%) to four percent (4%). The presumed cost of doing business in the Act has not changed since 1951, the year the Unfair Cigarette Sales Act was enacted. The legislature could have concluded that market conditions have changed since 1951, supporting an increase in the cost of doing business. The legislature may have reviewed the statutes of other states and determined that four percent (4%) was a more appropriate amount. *See, e.g.*, Ind. Code Ann. § 24-3-2-2 (4.5% including cartage); Pa. Stat. Ann. tit. 72 § 202-A (4%); Mont. Code Ann. § 16-10-103 (5.75% including cartage); Neb. Rev. Stat. § 59-1505 (4.75% including cartage); S.D. Codified Laws § 37-10-10 (5.5% including cartage). Either is a rational basis supporting an increase in the presumed cost.

■ Finally, we address McLane's argument that the new Act requires the wholesaler to file with the Board to prove that its cost of doing business is lower than 4% before selling below the statutory floor. Specifically, Ark. Code Ann. § 4-75-702(5)(B) states that

> [i]n the absence of *the filing with the board of* proof *satisfactory to the board* of a lesser or higher cost of doing business by the wholesale dealer making the sale, the cost of doing business by the wholesale dealer shall be presumed to be four percent (4%) of the basic cost of the cigarettes to the wholesale dealer . . . .

*Id.* (emphasis added). In addition to changing the percentage from two-and-three-quarters percent (2.75%) to four percent (4%), the italicized portions were added by Act 627. This amendment merely clarifies where and generally what type of proof a wholesaler must file in order to make a below-cost sale. These changes do not cause this provision to be unconstitutional.

First, proof was required before the 2003 amendment. Before 2003, the proof was reviewed by the Department of Finance and Administration, rather than by the Board. The legis-

lature could have determined that the Board was more knowledgeable about the matters concerned than DFA, and therefore a more appropriate avenue for review. Second, the new language in the statute simply clarifies that the proof, already required by the Act before the amendment, should be filed with the Board. It does not change what we stated in *McLane I* that "a wholesaler, who had a desire to charge a lesser price for cigarettes, has a right under the Act and Regulation to submit to the Director a request to charge a lesser price . . . ." *McLane I*, 332 Ark. at 298, 965 S.W.2d at 114. The legislature may have determined that such proof should be filed before any sales to provide for more efficient regulation. These are rational bases for the amendment. Finally, these changes do not change the basis of our holding in *McLane I* that the Act is constitutional.

McLane's second point on appeal is that the circuit court erred in finding the anti-rebate provisions of the Act found in Ark. Code Ann. § 4-75-708(e) constitutional. McLane argues that they are unconstitutional because there is no rational connection between the giving of a rebate and the presumption of predatory intent. Appellees argue that this court's reasoning in *McLane I* finding that the presumption of predatory intent based on below-cost sales was constitutional supports the constitutionality of the presumption of predatory intent arising from rebates. We agree.

 First, the exceptions found in Ark. Code Ann. § 4-75-703 apply to rebates as well as to sales below cost. Second, wholesalers may sell below the statutory minimum by offering proof that their cost of doing business is less than the statutory minimum. Finally, there is a rational basis to support the legislature's prohibition against rebates. Testimony at trial established that rebates are often secret, which makes it difficult for the Board to determine whether rebates have been given, causing sales to be below cost. Because rebates make it more difficult to enforce and administer the Act, the legislature may have decided to prohibit them. Thus, we conclude that the anti-rebate provisions found in Ark. Code Ann. § 4-75-708(e) are constitutional.

 Finally, McLane argues that the circuit court erred in failing to consider how the Act and Regulation 15 together deny due process. Appellees argue that McLane made only a facial challenge to the statute below and specifically did not challenge Regulation 15. Indeed, in his opening argument to the circuit court, McLane's attorney stated: "Regulation 15 is not being

challenged in this proceeding. We're focusing on the statute." Comments throughout the hearing confirmed this position. McLane admitted that it was challenging this regulation in another lawsuit. As McLane is not challenging the constitutionality of the regulation, it is irrelevant to this appeal. This court has held that a regulation, however flawed, cannot render a statute under which it is promulgated unconstitutional. *See, e.g., Yamaha Motor Corp. v. Richard's Yamaha*, 344 Ark. 44, 38 S.W.3d 356 (2001). Also, it is well settled that we do not consider arguments made for the first time on appeal. *Castaneda v. Progressive Classic Ins. Co.,* 357 Ark. 345, 353, 166 S.W.3d 556, 562 (2004).

For the foregoing reasons, we find that the Unfair Cigarette Sales Act, as amended by Act 627 of 2003, is not unconstitutional under the due-process clauses of the Arkansas and United States Constitutions. We therefore affirm the decision of the circuit court.

Affirmed.

CORBIN, J., not participating.