Tomosa SUMMERVILLE *v.* Dr. Rufus THROWER, Joy Woolfolk, and Healthcare for Women, P.A.

06-501                                              253 S.W.3d 415

Supreme Court of Arkansas
Opinion delivered March 15, 2007

[Rehearing denied April 26, 2007.]

R. *David Lewis*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *John S. Cherry, Jr.*, and *Perry L. Wilson*, for appellee Joy Woolfolk.

*Mitchell, Blackstock, Barnes, Wagoner, Ivers & Sneddon, PLLC*, by: *Emily Sneddon*, for amici curiae American Medical Ass'n and Arkansas Medical Society in Support of Appellees Dr. Rufus Thrower, et al.

R OBERT L. BROWN, Justice. Appellant Tomosa Summerville appeals the dismissal of her medical-malpractice complaint against appellees Dr. Rufus Thrower, Joy Woolfolk, and Healthcare for Women, P.A.,[1] which dismissal was based on her failure to file an affidavit of reasonable cause within thirty days of filing her complaint, as required by Act 649 of 2003, now codified at Ark. Code Ann. § 16-114-209(b) (Repl. 2006). She raises multiple issues for reversal. We conclude that the mandatory thirty-day requirement for the affidavit of reasonable cause after filing the complaint directly conflicts with Rule 3 of our Rules of Civil Procedure regarding commencement of litigation. Accordingly, we reverse and remand.

On July 21, 2005, the appellant, Tomosa Summerville, filed a complaint in Pulaski County Circuit Court against Dr. Rufus Thrower, Joy Childress,[2] and Healthcare for Women, P.A. ("Healthcare") for medical negligence. The complaint alleged that on January 23, 2003, Dr. Thrower, a practicing obstetrician and gynecologist and owner of Healthcare, a clinic for women, "cut and tied [Summerville's] tubes." Summerville visited Healthcare again on August 8, 2003, and informed Joy Woolfolk, a licensed nurse practitioner working there, that the result of a recent

---

[1] At various times in the record, Healthcare is spelled as two words. We choose to spell it as one word, which is the spelling on the cover of the record.

[2] An amended complaint was filed on August 29, 2005, stating essentially the same allegations as the original complaint and changing Joy's last name from Childress to Woolfolk.

pregnancy test was positive. Woolfolk diagnosed Summerville as having a normal pregnancy and advised her to return to Healthcare on September 5, 2003, for prenatal care.

On August 28, 2003, Summerville became delirious and experienced abnormally heavy vaginal bleeding. She was taken to the University of Arkansas for Medical Sciences (UAMS) and was diagnosed with a tubal pregnancy and underwent emergency surgery. In her complaint, Summerville alleged that Dr. Thrower, Woolfolk, and Healthcare all violated the applicable standard of care. She alleged that Dr. Thrower, as owner of Healthcare, did not adequately supervise Woolfolk or take steps to assure that she was supervised by a physician and did not thoroughly examine Summerville or her medical chart. She further alleged that if Dr. Thrower did examine her medical chart, he should have diagnosed Summerville with a tubal pregnancy.

With regard to Woolfolk, Summerville alleged that she should not have undertaken Summerville's medical care without the adequate supervision of a physician and that Woolfolk should have diagnosed her with a tubal pregnancy and requested that Dr. Thrower examine her. Summerville asked for damages against the defendants for mental and physical suffering, disfigurement, and the incurrence of medical expenses. She also asked for punitive damages and alleged that Dr. Thrower intentionally and illegally allowed Woolfolk to provide medical care to her without the supervision of a physician. The doctor further assisted Woolfolk, according to Summerville, in the practice of medicine without a license.

On September 16, 2005, separate defendants Dr. Thrower and Healthcare filed a motion to dismiss the complaint, wherein they contended that Summerville failed to submit an affidavit of reasonable cause from a medical expert as required by § 16-114-209(b). Summerville responded to that motion and urged that § 16-114-209(b) was unconstitutional for multiple reasons. She also attached an affidavit to her response from her attorney, R. David Lewis, which stated that Lewis had researched the medical issues at the UAMS library and was convinced that there was a valid cause of action. The affidavit further stated that the physician who performed Summerville's surgery at UAMS had agreed to testify for Summerville but had not responded to the request for an affidavit. Separate defendant Woolfolk filed a motion to dismiss the complaint and asserted that the statute of limitations had

expired on the claim against her and also that Summerville had failed to meet the requirements of § 16-114-209(b).

Summerville subsequently filed two affidavits. The first, filed on October 11, 2005, was submitted by Dr. Nancy Andrews, a UAMS physician practicing obstetrics and gynecology, which averred that the standard of care in this community had been violated under the facts of Summerville's case. The second affidavit, filed on January 10, 2006, was submitted by Sarah Rhoads, a clinical assistant professor at the UAMS College of Nursing and a licensed advanced nurse practitioner specializing in women's health. That affidavit explained the applicable standard of care for nurse practitioners in this community relating to ectopic pregnancies.

A hearing was held, following which the circuit court entered an order on January 13, 2006, in which it ruled that § 16-114-209(b) was constitutional. As a result, the court dismissed Summerville's complaint with prejudice against all defendants for failure to submit an affidavit of reasonable cause by a qualified expert within thirty days of the filing of the complaint, as required by § 16-114-209(b)[3]. Summerville filed a motion for a new trial and modification of the judgment and contended that the dismissal should have been without prejudice. Because the circuit court did not rule on the motion for a new trial and modification of the judgment within thirty days, the motion was deemed denied.

Summerville appeals and contends that the circuit court erred for multiple reasons in ruling that § 16-114-209(b) was constitutional. She first claims that the statute is in conflict with this court's Rules 1, 3, 8, 9, 10, 11, 12, 15, 41, and 56 of the Arkansas Rules of Civil Procedure. Because we reverse on the issue that § 16-114-209(b)(3)(A) directly conflicts with Rule 3 of our Rules of Civil Procedure, we need not address the remaining issues raised on appeal.

The entire statute in question in this case provides as follows:

(a) If any action for medical injury is filed without reasonable cause, the party or attorney who signed the complaint shall thereafter, as determined by the court, be subject to:

---

[3] The circuit court denied separate defendant Woolfolk's motion to dismiss which was based on the statute of limitations.

(1)  The payment of reasonable costs, including attorney's fees, incurred by the other party by reason of the pleading; and

(2)  Appropriate sanctions.

(b)(1)  In all cases where expert testimony is required under § 16-114-206, reasonable cause for filing any action for medical injury due to negligence shall be established only by the filing of an affidavit that shall be signed by an expert engaged in the same type of medical care as is each medical care provider defendant.

(2)  The affidavit shall be executed under oath and shall state with particularity:

(A)  The expert's familiarity with the applicable standard of care in issue;

(B)  The expert's qualifications;

(C)  The expert's opinion as to how the applicable standard of care has been breached; and

(D)  The expert's opinion as to how the breach of the applicable standard of care resulted in injury or death.

(3)(A)  The plaintiff shall have thirty (30) days after the complaint is filed with the clerk to file the affidavit before the provisions of subsection (a) of this section apply.

(B)  If the affidavit is not filed within thirty (30) days after the complaint is filed with the clerk, the complaint shall be dismissed by the court.

Ark. Code Ann. § 16-114-209 (Repl. 2006).

This court has often stated our standard for reviewing the constitutionality of a statute:

It is well settled that there is a presumption of validity attending every consideration of a statute's constitutionality; every act carries a strong presumption of constitutionality, and before an act will be held un-constitutional, the incompatibility between it and the constitution must be clear. *Eady v. Lansford*, [351 Ark. 249, 92 S.W.3d 57 (2002)]. Any doubt as to the constitutionality of a statute

must be resolved in favor of its constitutionality. *Id.* The heavy burden of demonstrating the unconstitutionality is upon the one attacking it. *Id.*

*Whorton v. Dixon*, 363 Ark. 330, 336, 214 S.W.3d 225, 230 (2005). If possible, this court will construe a statute so that it is constitutional. *See McLane Southern, Inc. v. Davis*, 366 Ark. 164, 233 S.W.3d 674 (2006). This court reviews the circuit court's interpretation of the constitution *de novo*, and though this court is not bound by the circuit court's decision, the circuit court's interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *See First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005).

The Oklahoma Supreme Court recently considered an appeal from a dismissal of a medical-malpractice complaint due to failure to attach an affidavit from a qualified medical expert attesting to the merit of the cause of action. *See Zeier v. Zimmer, Inc.*, 152 P.3d 861 (Okla. 2006). In that case, the Oklahoma General Assembly had enacted legislation requiring that an affidavit of merit from a qualified expert be attached to medical-malpractice complaints. For good cause, a plaintiff could obtain a ninety-day extension of time to file the affidavit. Otherwise, the plaintiff's complaint would be dismissed. The Oklahoma plaintiff filed a medical-malpractice complaint without the affidavit and did not request an extension. The trial court dismissed the complaint without prejudice, and the plaintiff appealed.

The Oklahoma Supreme Court held that the act requiring an affidavit of merit was unconstitutional under Oklahoma's state constitution as special legislation and as constructing a monetary barrier to access to the courts. In so holding, the court said:

> The Oklahoma Legislature implemented the Affordable Access to Health Care Act (Health Care Act), 63 O.S. Supp. 2003 § 1-1708.1A *et seq.* for the purpose of implementing reasonable, comprehensive reforms designed to improve the availability of health care services while lowering the cost of medical liability insurance and ensuring that persons with meritorious injury claims receive fair and adequate compensation. Although statutory schemes similar to Oklahoma's Health Care Act do help screen out meritless suits, the additional certification costs have produced a substantial and disproportionate reduction in the number of claims filed by low-income plaintiffs. The affidavit of merit provisions front-load

litigation costs and result in the creation of cottage industries of firms offering affidavits from physicians for a price. They also prevent meritorious medical malpractice actions from being filed. The affidavits of merit requirement obligates plaintiffs to engage in extensive pre-trial discovery to obtain the facts necessary for an expert to render an opinion resulting in most medical malpractice causes being settled out of court during discovery. Rather than reducing the problems associated with malpractice litigation, these provisions have resulted in the dismissal of legitimately injured plaintiffs' claims based solely on procedural, rather than substantive, grounds.

*Zeier*, 152 P.3d at 869.

For Summerville's point that § 16-114-209(b) conflicts with Rule 3 regarding commencement of a cause of action, she relies on *Weidrick v. Arnold*, 310 Ark. 138, 835 S.W.2d 843 (1992). In *Weidrick*, this court held that the statutory requirement for a sixty-day notice to medical-malpractice defendants prior to the filing of an action was superseded by Rule 3 of the Arkansas Rules of Civil Procedure. In so holding, we concluded that Rule 3 governs the commencement of all civil actions and requires only that a complaint be filed with the clerk of the appropriate court. We concluded that the sixty-day-notice requirement added an additional condition for the commencement of a medical-malpractice action, and we struck down this procedural hurdle as being directly at odds with Rule 3. The crux of Summerville's contention on appeal today is that a mandatory requirement for an affidavit thirty days after filing a complaint, the absence of which will lead to a dismissal, is an added encumbrance for filing a complaint that does not differ essentially from the mandatory sixty-day notice we struck down in *Weidrick, supra.*

■ The appellees respond that *Weidrick, supra,* is distinguishable from this case because, first, the affidavit requirement under § 16-114-209(b) is substantive law rather than a mere procedural rule, and, second, the statute does not directly conflict with any of this court's Rules of Civil Procedure. The boilerplate definition of substantive law is "[t]he part of the law that creates, defines, and regulates the rights, duties, and powers of parties," while procedural law is defined as "[t]he rules that prescribe the steps for having a right or duty judicially enforced, as opposed to the law that defines the specific rights or duties themselves." *Black's Law Dictionary* 1443, 1221 (7th ed. 1999). Along those same

lines, this court said in *Middleton v. Lockhart*, 355 Ark. 434, 438, 139 S.W.3d 500, 502-03 (2003), "a true statute of limitations, one that will be considered procedural in nature, extinguishes only the right to *enforce the remedy* and not the substantive right itself." We added that if the statute extinguished the right to bring the lawsuit itself, rather than the right to enforce the remedy, then it would be substantive. *See Middleton, supra.* While the requirement for an affidavit of reasonable cause may well fall in the category of substantive law, an automatic dismissal of the cause of action if the affidavit is not filed within thirty days concerns enforcement of a remedy, and we hold it is procedural.

At the outset, it is important to highlight the fact that the Medical Malpractice Act currently contemplates two averments by experts: (1) the affidavit of reasonable cause, which is the subject of this appeal; and (2) expert testimony of the community's standard of care, the absence of which may lead to summary judgment in favor of the defendant. *See* Ark. Code Ann. § 16-114-206 (Repl. 2006). Since the enactment of the Medical Malpractice Act in 1979, our law has provided that the plaintiff has the burden of proof and that expert testimony by a physician must be produced, establishing a violation of the standard of care in the locality where the defendant doctor practices or in a similar locality to withstand summary judgment. *See* Act 709 of 1979, now codified at Ark. Code Ann. §§ 16-114-201 – 16-114-212 (Repl. 2006). *See also Eady v. Lansford*, 351 Ark. 249, 925 S.W.3d 57 (2002). The act specifies no time frame in which the expert testimony must be given. This court has upheld that requirement for expert testimony regarding the standard of care and held that it does not constitute special legislation. *See Haase v. Starnes*, 323 Ark. 263, 915 S.W.2d 675 (1996).

Act 649 of 2003, now codified at Ark. Code Ann. § 16-114-209, requires an additional medical expert averment in the form of an affidavit of reasonable cause within thirty days of filing a complaint and justifies it in the Emergency Clause on the basis that lower medical-malpractice insurance costs will follow. It is only the affidavit of reasonable cause required by § 16-114-209(b), and its dismissal procedure that we consider today.

Because we conclude that § 16-114-209(b) is procedural, we turn to its asserted conflict with Rule 3. The Arkansas Constitution is clear that rules of pleading, practice, and procedures for our courts fall within the domain of this court. Ark.

Const. amend. 80, § 3. We are hard pressed to distinguish the situation at hand from that in *Weidrick, supra*. As already observed, in *Weidrick*, this court struck down an act requiring a mandatory sixty-day notice prefatory to filing a medical-malpractice action as being in direct conflict with our Rule 3 for commencing civil actions. In doing so, we said:

> We can think of few rules more basic to the civil process than a rule defining the means by which complaints are filed and actions commenced for a common law tort such as medical malpractice. The express intent of the Arkansas Constitution and Act 38 of 1973 is for the governance of the procedure of the courts of this state to fall within the power and authority of the Arkansas Supreme Court. How civil actions are commenced is [a] fundamental cog in that procedural wheel.

*Weidrick*, 310 Ark. at 146, 835 S.W.2d at 847. There is little, if any, practical difference in this court's mind between a mandatory legislative requirement before commencing a cause of action like we had in *Weidrick* and a mandatory requirement within thirty days immediately after filing a complaint such as we have here. Both procedures add a legislative encumbrance to commencing a cause of action that is not found in Rule 3 of our civil rules. Appellees Thrower and Healthcare appear to acknowledge this when they write in their brief in support of motion to dismiss and for costs: "Alternatively, the pleading mistake [failure to include the reasonable-cause affidavit] means that this action was not properly commenced . . . ."

The constitutional infirmity in § 16-114-209(b) is the provision for dismissal if the affidavit does not accompany a complaint within thirty days. We do not hold today that the balance of § 16-114-209(b), requiring a reasonable-cause affidavit, is constitutionally infirm. Having said that, it appears that without the time limit of thirty days, the statute largely is duplicative of § 16-114-206 regarding the plaintiff's burden of proof and medical expert testimony concerning breach of the standard of care in the community.

We reverse the order of dismissal of the circuit court with respect to the thirty-day dismissal set out in § 16-114-209(b)(3)(A) and strike that provision as directly in conflict with Rule 3 of our Civil Rules of Procedure and this court's authority under amendment 80 of the Arkansas Constitution. We note that section 25 of Act 649 of 2003 contains a severability clause, and we hold that in all other respects, § 16-114-209(b) is valid.

Reversed and remanded.

GLAZE and IMBER, JJ., concur.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur with the result reached by the majority because Arkansas Code Annotated § 16-114-209(b)(3)(B) (Repl. 2006) conflicts with Rule 11 of the Arkansas Rules of Civil Procedure.

Section 16-114-209(a) authorizes the imposition of appropriate sanctions if a party or attorney files a medical malpractice action without "reasonable cause." In effect, the statutory authorization in § 16-114-209(a) mirrors Ark. R. Civ. P. 11, which empowers the circuit court to impose "appropriate sanctions" on any party or attorney who files a pleading without forming a belief based on reasonable inquiry that the pleading is "well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass[,] . . . cause unnecessary delay or needless increase in the cost of litigation." Both Rule 11 and § 16-114-209(a) allow the circuit court to use its discretion when determining the appropriate sanction. Thus, it is clear that § 16-114-209(a) does not conflict with Rule 11.

The same cannot be said for section 16-114-209(b)(3)(B), in that it completely strips the circuit court of its discretion in the imposition of sanctions. This statutory provision mandates a particular sanction — the dismissal of a medical malpractice action — that conflicts with Rule 11 in two respects. First, the statute requires a *particular* sanction, whereas Rule 11 affords the circuit court broad discretion to decide an "appropriate sanction." Second, it provides no opportunity for the plaintiff to withdraw or correct the alleged deficiency after notice of the challenge. Rule 11 specifically bars the filing of a motion for sanctions unless "the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected," within 21 days after service of the motion, or such other period as the court may prescribe. Ark. R. Civ. P. 11(b). Thus, our rule allows for a "safe harbor" during which a party may, without penalty, correct an alleged deficiency.

As the majority noted, the Arkansas Constitution expressly grants this court the authority to develop rules of pleading, practice, and procedure. Ark. Const. amend. 80, § 3. I would

reverse and remand because § 16-114-209(b)(3)(B) is directly in conflict with Rule 11 of our Civil Rules of Procedure and this court's authority under amendment 80 of the Arkansas Constitution.

GLAZE, J., joins this concurrence.